MURDOCK, Respondent, vs. BELOIT, DELAVAN LAKE & JANES-
VILLE RAILWAY COMPANY, Appellant.

*October 3—October 24, 1911.*

*Interurban railways: Condemnation of land: Use of streets: Dam-
ages: Appeal.*

In condemnation proceedings to determine the compensation to
be paid to the owner of abutting land on account of the op-
eration of an interurban railway on streets already used by
an urban railway, an award made by the jury and sustained
by the trial court should not be disturbed on appeal if the
evidence, in any fair view of it, afforded a legitimate basis for
such award.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Proceedings to determine compensation for taking plaint-
iff's real estate for interurban electric railway purposes, under
the power of eminent domain.

Commissioners, in due course, awarded plaintiff $750. The
company appealed and, in due course, the litigation was closed
by a verdict fixing the amount at $1,320, and rendition of
judgment therefor with costs.   Questions were saved for re-
view discussed in the opinion.

The following appeared by the evidence: Under a franchise
permitting use of the premises for electric street railway pur-
poses, the tracks, substantially as contemplated later in the
more extensive use leading to this litigation, were laid in 1902
and used up to the latter time under a fifty-year franchise.
The service required cars to pass frequently.   In July, 1908,
a franchise was granted to use the tracks for interurban as
well as urban purposes.   It was contemplated that the cars
doing interurban business would also do urban business while
operated inside the city limits.   The former required some-
what larger cars than the latter.   The later franchise per-
mitted use of cars for carrying freight and such are used to

some extent.    The substance of the evidence in support of the
verdict is this:

Mr. Pember: I think the interurban railway damages
plaintiff's property $1,500 to $2,000.    It interferes with the
use of the street a good deal by horses.    It interferes particu-
larly in winter.

Mr. Carter: I think the railroad, with its two tracks and
cars running as they do, damages the property twenty-five
per cent: In winter they shovel snow on the side and block
up the road.    The company forces the snow clear up on the
sidewalk.    I do not know of that having occurred except last
winter.    I do not consider a street railway on any street an
inconvenience.    The tracks in question are an inconvenience
because there are so many of them.    The property is right on
the street and you cannot get to it conveniently.    Plaintiff's
business has fallen off half from what it used to be.

Mr. Conrad: I think the presence of the tracks and acces-
sories and use thereof affects the value of the property.    A
street railway or interurban railway might be beneficial or
otherwise to property.    Sometimes one and sometimes the
other, according to circumstances.    The more people you bring
to some kinds of property the better.

Mr. Kelley: I think the location of those tracks and run-
ning of cars frequently and tracks around both sides of that
place, double tracks on one side, affect the property twenty
to twenty-five per cent.    I think plaintiff's property worth
$10,000.    It is the presence of the interurban tracks on two
sides of the property which reduces the value of the property
in my estimation twenty-five per cent.

Mr. Eller: In my judgment the railway damaged the prop-
erty twenty-five per cent.    The cars frighten horses.    I can-
not say that of the interurban more than ordinary street rail-
way cars.    I do not think the interurban railway injures my
property any more than a street railway on the street in the
same way.

Mr. Schmidley: The laying of tracks and accessories and running of cars injures the value of the property twenty to twenty-five per cent. The railway cuts up the street. I would dislike to have it go by my place. A man is afraid to hitch a horse by plaintiff's property. The farmers are afraid to drive their horses along there. The railway injures the property as a place of business.

Mr. Austin: The presence of the interurban injures plaintiff's hay-scale business. I have a number of farms and have withdrawn my patronage, partly, from plaintiff on account of the railroad.

Mr. Scott: I have withdrawn my patronage, somewhat, from plaintiff since the interurban was established. The railroad damages the property. Cars frighten horses. *Murdock's* business has fallen off half. If the railway was not there he would get more business.

Mr. Owen: The railway causes more or less of a jam by plaintiff's property. It is noisy there. When you want to telephone you cannot hear. Horses get frightened.

*Mr. Murdock,* the plaintiff: The railway was put in about six years ago. Before that I did business of weighing with my scales to the amount of twenty-five to thirty loads a day. As soon as the railway was put in there was a change. I have carried on grain business on the property for many years. The running of cars in front of my property has injured my business. I will not say the railway has not been in eight years. I do not know of any one who has ceased to patronize my scales on account of the railroad, but before the track was put down I used to do a good share of the weighing.

There was other evidence to the effect that plaintiff used the property for a home, for renting rooms in a structure thereon, for maintaining hay-scale business, and for a hay and chicken barn. He testified that the railroad did not interfere with his rooming business, but greatly injured his weighing business. There was much evidence tending to show that the

interurban business did not change the situation materially from what it would be with the urban business only.

The court instructed the jury that the limit of plaintiff's right to recover was the difference between the fair market value of his property before being used for interurban railway purposes, and the value under the conditions created by such use. The jury were admonished that if it were not for interurban business "defendant would still have the right, without compensation to plaintiff, to maintain tracks, poles, and wires thereon for operating a street railway;" that the only damage to be considered was such as the evidence showed was caused by the additional use for interurban business.

The cause was submitted for the appellant on the brief of *Charles E. Pierce,* and for the respondent on that of *Thos. S. Nolan.*

MARSHALL, J. The court, in the instruction referred to in the statement, properly informed the jury as to the rule of damages. Counsel for appellant makes no complaint in respect thereto. No claim of error as to matters of law is made except that the evidence was wholly insufficient to support so large a verdict as the one rendered. Counsel appreciates that if the evidence, in any fair view of it, afforded the jury a legitimate basis for their conclusion, it cannot be disturbed on appeal. The rule in that regard is elementary, and about as unbending as any regulation of litigation could well be. We must be mindful that the court below passed upon the matter under circumstances more favorable for arriving at a just result than are afforded here. To disturb the result would require overriding the conclusion of the jury, reinforced by that of the trial judge. Only a very clear case of error would justify doing so. Such is not, in the judgment of the court, presented by the record before us.

*By the Court.*—The judgment is affirmed.