Smuda and wife, Appellants, vs. Milwaukee County, Respondent.

*March 3—April 8, 1958.*

474

For the appellants there were briefs by *Eisenberg & Kletzke,* attorneys, and *John W. Bernard* of counsel, all of Milwaukee, and oral argument by *Mr. Sydney M. Eisenberg* and *Mr. Bernard.*

For the respondent there was a brief and oral argument by *C. Stanley Perry,* corporation counsel.

WINGERT, J.   The judgment must be affirmed.

1. *Value of original property.*   The finding of the jury that appellants' entire property had a fair market value of $27,500 immediately before the taking is amply sustained by the evidence. While two expert appraisers called by the owners placed its value at $69,675 and $65,400, four other experts testified on behalf of the county that its value was respectively $20,000, $23,000, $24,795, and $26,500. They gave reasons for their appraisals which the jury could properly consider persuasive. Appellants challenge the disinterestedness of two of the appraisers on the ground that they had done a great deal of appraising work for the county, which presumably was profitable to them, and hence were

biased; but nothing appears which would destroy their credibility as a matter of law, and hence it was for the jury to determine what weight to give to their views. We are not persuaded that the jury was motivated by passion and prejudice.

2. *Value of remaining parcel.* Evidence in the record also warranted the jury in finding that the triangular parcel of .088 acre remaining to the owners was worth $3,000 immediately after the taking, although appellants strenuously argue that it had no substantial value and that the trial court erred in not granting their motion to change the jury's answer to zero.

Appellants' expert witnesses evaluated the remaining parcel at $500 and $800. Two experts who testified on that point for the county appraised the value of the triangle at $4,500 and $5,747, pointing out among other things that the property could be used for billboards or for small roadside retail establishments, such as fruitstands. One Hornbeck, an expert in the business of outdoor advertising, with thirty-three years' experience in the business of leasing signboard space in the Milwaukee area, testified that the parcel, including the garage, would have a fair annual leasehold value of $350 per year for signs, which figure, capitalized at 6 per cent, would produce a value of $5,800.

Appellants contend that the appraisals by the county's witnesses were based on false assumptions as to the availability of the property for retail purposes and for signboards. Reference is made to testimony that a 50-foot setback line was proposed for off-street parking, which would leave scarcely any of the triangle available for building. It was not shown, however, that such a setback line had actually been adopted or was inevitable; and the mere proposal did not require the jury, as a matter of law, to disregard the testimony of the county's expert witnesses. In fixing the value of the triangle at $3,000 in the face of the appraisals of

$4,500 and $5,747 and $5,800, we think the jury gave all required weight to the proposal for a setback line, particularly since at worst such setback would not interfere with the use of the lot for parking.

It is further suggested that the triangle had no value for signboard purposes, because a signboard on the premises, so near an intersection, would produce a safety hazard on the highway and would therefore be prohibited by sec. 343.482 (4), Stats. 1951, now sec. 86.191 (4). That statute is not an absolute prohibition of all signs, however, but only of "danger-producing" signs "which will endanger the safety of the public traveling along any highways." The outdoor-advertising expert, Hornbeck, testified that the signs on which he based his estimate of rental value would not create any safety hazard, since they would be placed on the roof of the garage; and there was testimony that the garage could remain in its location notwithstanding the zoning ordinance, because it was a nonconforming use existing prior to the zoning ordinance. Without further elaboration, we think the jury was within its province in giving weight to this uncontradicted testimony and ascribing a substantial value to the property for signboard purposes.

3. *Ruling on evidence.* At the trial the county's counsel asked one of the appellants whether he and his wife had on April 20, 1953 (about four months after the taking), purchased an adjoining acre of land from a neighbor for $3,000. The owner's attorney immediately moved for a mistrial. The court treated the motion as an objection to the question, and ruled "The objection to the question is sustained and the jury will disregard the question completely." Prejudicial error is claimed, but we see none. The matter was not pressed by the county, and the question was never answered. The question itself may have been inartistic, but it was not improper in any sense which would require a mistrial. Where land value is in issue in a condemnation proceeding, comparable

sales of similar lands in the same locality may be proper subjects of evidence. *Blick v. Ozaukee County,* 180 Wis. 45, 46, 192 N. W. 380. Here a sufficient foundation may not have been laid for the question, with respect to the comparable character of the adjoining tract; but no objection was made on that ground.

4. *Erroneous instruction to jury.* In instructing the jury relative to the controversy between the parties as to the possible use of the remaining triangle for signboards, the court paraphrased sec. 343.482 (4), Stats. 1951, as prohibiting erection of any danger-producing advertising signs at a highway intersection "when such intersection is *bound by* the corporate limits of any city or village." Either the judge misspoke or there was an error in reporting, for the quoted phrase should have been "when such intersection is *beyond* the corporate limits of any city or village." After the jury had been out half an hour they returned, and the court stated to them that an issue had been raised as to whether the reading of the statute was correct, and therefore he would read it again, which he did, correctly using the word "beyond" instead of "bound by." After that the jury resumed deliberation.

We think the court sufficiently corrected the mistake in the instruction to remove any possibility of prejudice. We cannot imagine that the jury so carefully noted the precise words "bound by" in the instruction as first given and so tenaciously retained them in mind after having been warned of possible error and having heard the statutory provision correctly reread, that the result could have been affected by the original slip of the tongue. See *Powers v. Joint School Dist.* 2 Wis. (2d) 556, 562, 87 N. W. (2d) 275. It is doubtful that the mistake could have been prejudicial if it had not been corrected, for no question as to the geographical application of the statute was in issue, and regardless of the location of the land relative to corporate limits, the context

shows clearly that the court and the parties treated the statute as in effect at the particular locality.

*Frankovis v. Klug & Smith Co.* 275 Wis. 156, 81 N. W. (2d) 495, on which appellants rely, is readily distinguishable. There we held that an erroneous instruction was not cured by a correct statement of the point later in the instructions; but there unlike the present case, it was not pointed out to the jury that the later instruction was given to correct the former; and the error was on a major point which in the particular circumstances seemed quite likely to have affected the result, whereas here, the defect, in its context, could not have been prejudicial.

*By the Court.*—Judgment affirmed.