LEMKE, Respondent, v. GUSE and another, Appellants.

*November 23, 1964—January 5, 1965.*

For the appellants there was a brief by *John H. Regan* of Milwaukee, attorney, and *James A. Fitzpatrick* of Watertown of counsel, and oral argument by *Mr. Fitzpatrick.*

For the respondent there was a brief by *Habush, Gillick & Habush,* attorneys, and *Robert L. Habush* of counsel, all of Milwaukee, and oral argument by *Robert L. Habush.*

FAIRCHILD, J. Defendants contend (1) there was insufficient evidence to support a finding that Miss Guse was negligent, and (2) if she was negligent, the evidence would not support a verdict attributing 65 percent of the causal negligence to her.

"When a jury verdict is attacked we inquire only whether there is any credible evidence that, under any reasonable view, supports the verdict." [1]

"In the great majority of automobile accident cases the comparison of negligence is for the jury, and the instances in which a court can rule as a matter of law that the negligence of a plaintiff equaled or exceeded that of a defendant are extremely rare." [2]

*Miss Guse's negligence.* Lemke testified that the left side of Miss Guse's car was about three feet from the fronts of the cars parked just north of the driving space where the collision occurred. There was evidence that she had said before trial that she was about three to four feet south of the parked cars. Although there was other testimony at the trial indicating that she drove somewhat farther to her right, the jury was not obliged to accept it. The estimates of width of this driving space varied from 35 to 45 feet. It has been argued that her intended turn to the right would prevent her from traveling at the extreme right as she approached the stall into which she would turn. Nevertheless, the jury could properly find that she drove unnecessarily close to the left side of the driving space and blocked Lemke's normal path.

It is true that certain rules of the road in ch. 346, Stats., requiring operation of vehicles to the right on highways,

[1] *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400.

[2] *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 471, 124 N. W. (2d) 609.

*e.g.,* secs. 346.05, 346.06, and 346.09, do not apply to conduct on a private parking lot. The jury could, however, properly consider customs generally observed in deciding what would constitute ordinary care under the circumstances. It was within the province of the jury to determine whether it was negligence for Miss Guse to drive as far to the left as she did.

The go-cart was a tubular frame cart about six and one-half or seven feet long, two to four inches off the ground. The parked cars obstructed Miss Guse's view of Lemke, and his of her, until about the time he came into the southernmost east-west driving space. There was testimony, however, that the go-cart motor emitted a very loud noise. One witness heard the cart approaching as he walked toward the plant, and turned to watch. There was conflicting testimony as to whether or not any windows of Miss Guse's car were open. The jury could have determined that the noise gave a warning which Miss Guse should have heard and heeded.

*Comparison with Lemke's negligence.* The go-cart had a top speed of 30 to 35 miles per hour. The company was apparently interested in determining the endurance of the mountings of the engine when subjected to vibration. Before the day of the collision, Lemke had been test-driving on another lot, but it had been graded. Because it was too smooth, he had been instructed to drive on the lot where the collision occurred. He was told to get the cart up to full speed wherever permissible.

His hours were from 4 a. m. to 1 p. m. Other employees continued testing thereafter. The shop employees started work at 7 a. m. and the office employees at 8. Lemke testified that the former arrived between 6:30 and 6:50 and the latter between 7:30 and 7:50. He said he was instructed on each occasion that he was to wait "until practically all the people who were coming were there, and then continue my testing." His supervisor testified he told Lemke that "from

6:30 until after 8 he should make sure not to go into the south end." The supervisor had, however, made a report of the accident in which he wrote that Lemke "was told to stay out of the parking areas when the cars started arriving at 6:30 a. m. and shortly before 8 a. m." The testimony placed the collision at 7:45 a. m. or shortly after 7:50 a. m. Evidently Lemke considered that the bulk of the office employees had arrived before he resumed driving, and that resumption was consistent with his instructions.

He testified that as he turned from the north-south lane into the east-west driving space, his speed was five to 10 miles per hour. Whatever his speed, it was too great to permit him to stop in time after seeing that a car obstructed his path. The jury presumably considered him negligent in proceeding at that speed when he was aware that some of the office employees might still arrive and that he could not see them or they him until he got around the end of the row of parked cars.

Although he had been told to be careful, the purpose of his job was apparently to put mileage on the carts as fast as possible. The decision to operate this type of low cart in a parking lot filled with full-sized automobiles was his employer's, not his. Under the circumstances, we do not conclude, as a matter of law, that his negligence equaled or exceeded that of Miss Guse.

*By the Court.*—Judgment affirmed.