WEEDEN and wife, Appellants, v. CITY OF BELOIT, Respondent.

*January 10—February 1, 1966.*

---

For the appellants there was a brief and oral argument by *Clyde E. Sheets* of Milwaukee.

For the respondent there was a brief by *Garrigan, Keithley, O'Neal, Dobson & Elliott* and *Roger D. O'Neal,* all of Beloit, and oral argument by *Roger D. O'Neal.*

HEFFERNAN, J.

*Is there credible evidence to*
*sustain the jury's verdict?*

In reviewing a jury verdict this court need only consider that evidence which supports the verdict.[1] It is also clearly a rule of this court that a verdict should not be disturbed "if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding."[2] This approach is especially applicable when, as in the instant case, the trial court approved of the verdict.[3] That this approach is equally applicable in condemnation cases is evident from the following statement made by this court in affirming a jury verdict on a condemnation award:

"We must be mindful that the court below passed upon the matter under circumstances more favorable for arriving at a just result than are afforded here. To disturb the result would require overriding the conclusion of the jury, reinforced by that of the trial judge."[4]

The instant case also presented the jury and the trial court with considerable conflicting expert testimony. It was the duty of the trier of the fact to determine the credibility of the witnesses and resolve the conflicting

[1] *Lane v. Collins*, ante, p. 66, at page 70, 138 N. W. (2d) 264; *Zartner v. Scopp* (1965), 28 Wis. (2d) 205, 209, 137 N. W. (2d) 107; *Jensen v. Heritage Mut. Ins. Co.* (1964), 23 Wis. (2d) 344, 348, 127 N. W. (2d) 228.

[2] *Fields v. Creek* (1963), 21 Wis. (2d) 562, 568, 124 N. W. (2d) 599; *Lemke v. Guse* (1965), 26 Wis. (2d) 80, 83, 131 N. W. (2d) 893; *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 307, 120 N. W. (2d) 156.

[3] *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400; *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. (2d) 651, 654, 135 N. W. (2d) 263; *Schilling v. Stockel* (1965), 26 Wis. (2d) 525, 538, 133 N. W. (2d) 335.

[4] *Murdock v. Beloit, D. L. & J. R. Co.* (1911), 147 Wis. 100, 103, 132 N. W. 979.

testimony.[5] This rule is equally applicable in condemnation cases.[6]

The evidence presented clearly sustains the jury's verdict finding that the fair market value was $34,000.

One of the appellants' witnesses testified that the property had a value of $75,600, and the other testified to a value of $70,000. Three witnesses appeared for the city and, as is not unusual in these cases, they appraised the land at appreciably less. Their figures were $22,355.-95, $22,379.00, and $22,378.33. In addition, evidence of comparable sales was admitted by the trial judge.

In *Hurkman v. State* [7] this court stated:

"We take notice from the records of innumerable land-condemnation cases that opinions of ostensibly equally qualified experts as to values often vary to a substantial and irreconcilable degree. Considering the opinions of the experts alone, in these cases, can leave the jury with little rational basis for its ultimate findings. In these instances proper evidence of comparable sales can be of substantial aid to the jury in the performance of its obligation to find the true value." [8]

[5] *Drane v. State*, ante, p. 208, 138 N. W. (2d) 273; *Gauthier v. State* (1965), 28 Wis. (2d) 412, 416, 137 N. W. (2d) 101; *State v. Stevens* (1965), 26 Wis. (2d) 451, 464, 132 N. W. (2d) 502.

[6] *Smuda v. Milwaukee County* (1958), 3 Wis. (2d) 473, 475, 476, 89 N. W. (2d) 186.

[7] (1964), 24 Wis. (2d) 634, 130 N. W. (2d) 244.

[8] Id. at page 641; other cases noting the admissibility of comparable sales include *Bear v. Kenosha County* (1963), 22 Wis. (2d) 92, 99, 100, 125 N. W. (2d) 375; *Smuda v. Milwaukee County, supra,* footnote 6; *Blick v. Ozaukee County* (1923), 180 Wis. 45, 46, 192 N. W. 380; *American States Security Co. v. Milwaukee N. R. Co.* (1909), 139 Wis. 199, 206, 120 N. W. 844; *Stolze v. Manitowoc Terminal Co.* (1898), 100 Wis. 208, 214, 75 N. W. 987; *Washburn v. Milwaukee & Lake Winnebago R. Co.* (1884), 59 Wis. 364, 377, 18 N. W. 328; *Watson v. Milwaukee & M. R. Co.* (1883), 57 Wis. 332, 350, 15 N. W. 468. Also see Heaney, Land Condemnation, 1959 Seminar for Wisconsin Lawyers, pp. 47–50; 5 Nichols, Eminent Domain (3d ed.), pp. 408–410,

These sale prices varied from $9,000 to $45,000. Appellants contend that the comparable sales offered by the city were not similar enough to provide a basis of valuing the property in question. The rule, however, in this state is that it is in the sound discretion of the trial court to determine whether the sales offered are sufficiently comparable to be of assistance to the jury in ascertaining fair market value. The trial judge's determination in this respect will not be reversed in the absence of clear error.[9] Moreover, the extent to which the offered sales are truly comparable goes to the weight of the expert's testimony and not to admissibility.

In addition, the jury was properly instructed that in giving weight and effect to other sales it was to consider "all of the elements of similarity in situation and time, and also all of the elements of dissimilarity and to determine how far such sales go to establish what was the fair market value on the day of taking."

This court said in *Bear v. Kenosha County:*

"The expert witness testifying as to value of property which he has examined should base his opinion on comparable sales as an element of value if such sales exist. The sales used as a foundation or partial foundation of an expert's opinion of value are admissible and if

sec. 21.1, and pp. 417–436, sec. 21.3[1]; 1 Orgel, Valuation under The Law of Eminent Domain (2d ed.), pp. 582–595, secs. 137–141; Anno. Admissibility on issue of value of real property of evidence of sale price of other real property, 85 A. L. R. (2d) 110, 114, 119, 122.

[9] *Blick v. Ozaukee County, supra,* footnote 8; *American States Security Co. v. Milwaukee N. R. Co., supra,* footnote 8; *Stolze v. Manitowoc Terminal Co., supra,* footnote 8. See again 1 Orgel, p. 586, sec. 138; Anno. 85 A. L. R. (2d) 110, 126. Also see *Bear v. Kenosha County, supra,* footnote 8, where the trial court's discretion is stressed on sales not as direct evidence of comparable sales but as a basis for the expert witnesses' opinion.

not comparable, go to the weight of the expert's opinion, not their admissibility. The rule of comparable sales is applicable to direct evidence of sales for consideration of the jury in determining the value. The materiality of the elements of the foundation for an expert's opinion goes to its weight." [10]

It is clear that the value arrived at was well within the range of values placed in evidence. While it may well be possible for reasonable persons to arrive at different values within the limits placed in evidence, there is credible evidence to sustain the jury's verdict.

*Was it improper for three of the city's*
*witnesses to testify to a value based*
*on a joint or collaborated appraisal?*

The appellants contend that the values testified to by the city's witnesses do not support the verdict inasmuch as it was admitted that the figure testified to was arrived at after a series of conferences between the three witnesses and was an average of separate valuations. The appellants claim that this is a quotient appraisal and is invalid. The question of quotient appraisals has not been considered by this court before. In the few reported cases on this subject in other jurisdictions, the courts have determined the question of whether the appraisal was an improper quotient appraisal by applying the same rule as that applied in determining whether a jury's verdict was an improper quotient verdict. The crucial issue, therefore, is whether the appraisers agree in advance to accept as a final appraisal figure a sum arrived at by dividing the aggregate of the amounts of their individual estimates by the number of appraisers, regardless of their individual judgment. If this is done, the appraisal is

---

[10] *Bear v. Kenosha County, supra,* footnote 8, page 100.

considered invalid.[11] We are in agreement with this approach as applied to quotient jury verdicts.[12]

Even though we were to apply the rationale of the quotient-verdict cases to appraisals, we would not find the procedure utilized here objectionable.

While it was admitted that the appraisers averaged separate valuations and by dividing arrived at a figure, the record is devoid of any evidence to show that they agreed in advance to bind themselves to that quotient. Rather, it appears that they met as many as five times, discussed various approaches to valuation, and after reaching a quotient agreed that the amount thus derived represented the individual valuation of each of them. There is no testimony that any of the witnesses arrived at a final individual appraisal in advance of these discussions. The record shows that each of them separately visited the premises, and they together estimated the value of the property by computing the value on the basis of various accepted methods of valuation (comparable sale, income, and cost of reproduction). These various values were added together, and that sum was divided by the number of valuation methods utilized. Nowhere does the record show that the witnesses agreed in advance to be bound by the figure that resulted. It is clear, moreover, that the figure was the quotient of the *values* arrived at by the several methods, and not the quotient of each appraiser's considered valuation. It is only by coincidence that the number of methods used was the same

[11] *Virginia Electric & Power Co. v. Marks* (1953), 195 Va. 468, 476, 477, 78 S. E. (2d) 677, 39 A. L. R. (2d) 1201; *Schreiber v. Pacific Coast Fire Ins. Co.* (1950), 195 Md. 639, 644, 75 Atl. (2d) 108, 20 A. L. R. (2d) 951. Also see Annos. Quotient arbitration award or appraisal, 20 A. L. R. (2d) 958, and Quotient condemnation report or award by commissioners or the like, 39 A. L. R. (2d) 1208.

[12] *Ken-Crete Products Co. v. State Highway Comm.* (1964), 24 Wis. (2d) 355, 363, 129 N. W. (2d) 130; *Schiro v. Oriental Realty Co.* (1959), 7 Wis. (2d) 556, 564, 97 N. W. (2d) 385. Also see Anno. Quotient Verdicts, 52 A. L. R. 41, 44.

as the number of appraisers. It is therefore apparent that the result reached here would not be invalid even in those states that frown on quotient appraisals.[13]

Moreover, we do not consider the "appraisal" here analogous to the situation where the award of appraisers in and of itself has some legal effect, as, for example, an appraisal pursuant to a policy of insurance under sec. 203.04, Stats. The appellants and the record refer to the parties who testified in regard to value on behalf of the city as "appraisers." In fact, in a judicial inquiry into value, they are nothing more than expert witnesses; and, as a consequence, the weight of their testimony and of their opinions is subject to the tests usually employed in

---

[13] "It is not unusual or unnatural for men of independent minds, composing a condemnation commission, to take different views of values. Consequently, they are frequently called upon to adjust their views to the views of their associates. If they undertake such adjustment with open minds and, after a full and fair discussion, give due consideration to the evidence, the opinions of their associates, and all of the factors involved, and without the sacrifice of their conscientious and deliberate opinion reach agreement as to what their award should be, then their award is a valid award and not a quotient award." *Virginia Electric & Power Co. v. Marks* (1953), 195 Va. 468, 476, 477, 78 S. E. (2d) 677, 39 A. L. R. (2d) 1201.

In accord is the following statement from *Schreiber v. Pacific Coast Fire Ins. Co.* (1950), 195 Md. 639, 644, 75 Atl. (2d) 108, 20 A. L. R. (2d) 951:

"It has been held that a quotient verdict is no more lawful for arbitrators than for jurors. [Case cited.] If, however, two arbitrators or appraisers strike a mean between the opposing claims of the parties and then adopt it as their appraisal, this is not unlawful, though it might be if they had agreed in advance to accept the mean. [Case cited.] In the instant case we think the appraisal is not invalid. We do not sanction 'quotient verdicts' by arbitrators or appraisers. But without some conscious or subconscious, exact or approximate, splitting of differences, no agreement would be reached by jurors, arbitrators, appraisers or bargainers. There is no evidence that these appraisers agreed to be bound by the result of their computations or otherwise subordinated their judgment to the fall of the dice."

courts, and though these experts agreed in advance to set individual values and then arrived at a quotient as the group's opinion, we would not hold that that figure did not have evidentiary value. The opinion of an expert witness as to value has little probative worth unless it is soundly arrived at. In the event a quotient figure were used, it would be incumbent in a condemnation award for the witness to detail, as he does now, his computations, the various individual values that were used, and the methods employed to arrive at each of them. As the trial judge required in this case, the method used by the experts would have to be clearly set forth, the individuals could be obliged to testify, and they would be subject to cross-examination. The validity of their individual opinions could easily be examined. In this respect, a quotient opinion as to value is very different from a quotient verdict. If his opinion is to have any weight, it is the duty of the witness to testify concerning the method of his analysis, while the jurors in this state have no right to testify concerning the method of reaching a verdict.[14] It is our opinion that expert witnesses as to value should not be limited by the same rule that outlaws quotient jury verdicts.

*Did the trial court improperly retain $7,000*
*of the jury award as security for rent due*
*from former owner to city of Beloit?*

On motions after verdict the city first raised the question of the owners' failure to pay rent. It alleged that the owners had agreed to pay the rent from the eventual condemnation award, and that $6,500 was owed at the date of the judgment. The city asked that the amount of rental due be deducted from the award and paid over to it. The appellants filed appropriate objec-

[14] *Ford Motor Credit Co. v. Amodt*, ante, p. 441, 139 N. W. (2d) 6.

tions and contended that it was entitled to a jury trial in a separate action for the purpose of determining its liability to the city of Beloit. The court then ordered that the sum of $7,000 "be retained by the Clerk of the Circuit Court . . . to be held as security for such rentals, if any, . . . as may finally be determined in a separate action brought by the city of Beloit, said action to be brought within 90 days from April 2, 1965."

The appellants object to the withholding of this sum. The only reason advanced for the objection, however, is their contention that the trial court is in effect setting a ninety-day statute of limitations for the commencement of a rental action by the city. If this were the case, it is not apparent what standing the appellants have to object to a period of limitations running against the city. However, it obviously is not that. The trial court cannot limit the time in which action can be brought to collect the rent, and it has not attempted to do so. It merely has told the city that, if it wished to resort to the $7,000, a particular fund segregated from the condemnation award, it was obliged to act within ninety days.

We consider the action of the court to be within its inherent powers to further the administration of justice. In effect it consented to act as stakeholder, and invited an action similar to interpleader under the Federal Rules,[15] for the purpose of determining the right to the fund in question.

The appellants also ask for reversal and a new trial in the interest of justice. However, upon a complete review of the record and the evidence therein, we cannot conclude that it is probable that justice has miscarried or that the award is not supported by the evidence.

*By the Court.*—Judgment affirmed.

[15] Federal Rules of Civil Procedure, 28 U. S. Code, sec. 1335.