Anthony L. Alsum and Sandra L. Alsum,
Plaintiffs-Appellants,

v.

Wisconsin Department of Transportation,
Defendant-Respondent.

Court of Appeals

*No. 03–2563. Oral argument August 18, 2004.—Decided
September 15, 2004.*

2004 WI App 196

(Also reported in 689 N.W.2d 68.)

654

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Martin J. De Vries* of *Sager, Colwin, Samuelsen & Associates, S.C.*, Fond du Lac, and *Hugh R. Braun* of *Godfrey, Braun & Frazier, LLP*, Milwaukee. There was oral argument by *Hugh R. Braun*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Sandra L. Tarver*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Sandra L. Tarver*.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.   In this eminent domain case, Anthony L. and Sandra L. Alsum appeal from a circuit court order granting the Wisconsin Department of Transportation's (DOT) motion to dismiss and motion to exclude the appraisal report and testimony of the Alsums' own valuation expert, which, using income evidence, demonstrated that the Alsums were entitled to $95,344 in severance damages. The Alsums maintain that because evidence of comparable sales was unavailable, their valuation expert's report and testimony on severance damages was admissible.

¶ 2.   After reviewing the record, we conclude that the circuit court failed to provide any reasoning for its discretionary determination that the sales offered by the DOT were sufficiently similar to provide a basis for valuing the property. Further, we cannot find any basis in the record for the circuit court's exercise of discretion in admitting the comparable sales evidence. We, there-

fore, reverse and remand the matter to the circuit court so that it may demonstrate, on the record, that it examined the relevant facts and applied the proper legal standard pertaining to comparable sales.

## FACTS

¶ 3.   The relevant facts are as follows. The Alsums purchased the 121.5–acre dairy farm in 1989. One year later, the Alsums built a new fifty-stall barn on the land, which they use as a milking facility. In the late spring of 2002, the DOT took title to the 36.31 acres in the center of the Alsums' farm, leaving them with two separate and unconnected parcels of land. The Alsums property now contains an approximately 70–acre front lot and a severed approximately 12–acre irregularly shaped parcel.

¶ 4.   Anthony testified that the Alsums have to cross the road to access the severed 12–acre parcel. He testified that the taking left him with a greater percentage of poorly drained soils, which places him at a disadvantage. He further testified that because of the taking, he will have to change the approach he takes to his dairy operation. His testified that if he cannot grow his crops, he will have to either purchase feed or reduce the number of cows he milks. He testified that he has not yet changed the number of animals he has on the farm. Anthony also averred that if he attempts to replace the 36 acres, he will have to purchase land "down the road" and incur the added expense of commuting to the land.

¶ 5.   Both the DOT and the Alsums hired valuation experts to appraise the land before and after the taking to assist the court in its just compensation determination. The DOT's valuation expert, Dennis Badtke, appraised the "before the take value" of the

entire 121.5–acre parcel at $450,000 and the "after the take value" of the remaining 82–acre parcel to be $350,000, for a total loss in market value of $100,000. Badtke concluded that the loss of the 36 acres did not affect the building site or the dairy operation and, as a result, severance damages were not warranted.

¶ 6. The Alsums' valuation expert, Daniel Cribben, found a before value of $460,000 and an after value of $360,000, for a loss of $100,000 not including severance damages. Cribben determined that severance damages further reduced the value after the taking by $95,344, for a total difference between the before and after values of $195,344. In his report, Cribben attributed severance damages to the loss of "carrying capacity" caused by the property's reduced feed producing land base. Cribben estimated that the loss of 36 tillable acres eliminated the ability to feed roughly 15 cows; thus, creating "[e]xcess [c]apacity to the '[l]arger [p]arcel' " and causing a "[l]oss of [n]et [i]ncome from [c]ow [d]isplacement."

¶ 7. According to Cribben, the excess capacity to the larger parcel caused damages of $29,589.51 in the form of lost rental income over the remaining economic life of the farm operation, discounted at current long-term mortgage rates. Cribben also concluded that the displacement of 15 cows caused damages of $65,754.47 in lost net income. This figure was calculated as the net present value of the farm's lost net income from the elimination of 15 cows over the operation's remaining economic life, discounted at current mortgage rates. Cribben affirmed these conclusions in his deposition.

¶ 8. The DOT moved to exclude Cribben's use of the income approach, arguing that it violated *Rademann v. DOT*, 2002 WI App 59, ¶ 28, 252 Wis. 2d 191, 642 N.W.2d 600, which reaffirmed the rule that income

659

evidence is never admissible where there is evidence of comparable sales. Without explanation, the trial court granted the DOT's motion in a written order.[1] Thereafter, at a pretrial hearing, the Alsums made an oral motion to reconsider the court's order excluding the income approach from evidence. The court denied the motion and rejected the Alsums' request to submit a revised appraisal report.

¶ 9.    The Alsums subsequently provided the DOT with a modification to the severance damage portion of Cribben's original report. The cover letter advised that the enclosed modification "omit[ed] 'any mention of any factors which could be construed as an income approach.' " In the "modification," Cribben found severance damages of exactly $95,344. He attributed the damages to the "economic impact to the remainder parcel after the taking." According to the modification, the taking "render[ed] the farm buildings obsolete."

¶ 10.    The DOT moved to exclude Cribben's modification, arguing that the modification was still based on the income approach, and to dismiss the case as moot. The court agreed and excluded Cribben's "sanitized version" from evidence. The court reasoned that because there was evidence of comparable sales, the income approach was inadmissible. The court then dismissed the case as moot because both valuation experts were in agreement that, severance damages aside, the before value less the after value totaled $100,000. This appeal follows.

## DISCUSSION

¶ 11.    On appeal, the Alsums maintain that the $100,000 award does not adequately compensate them

---

[1] The record does not contain a transcript of a motion hearing on this issue.

for the taking. They assert that the circuit court erroneously relied upon the comparative sales approach to estimate the value of their property after the taking, reasoning that the DOT's valuation expert was unable to provide evidence of the selling prices of comparable properties.[2] They then submit that because there was no evidence of comparable sales, the income approach to the appraisal of their severed properties, which was presented in Cribben's report, represents the most accurate way to determine damages in their case.

¶ 12. The rules that govern the determination of just compensation are provided in WIS. STAT. § 32.09 (2001–02).[3] In a partial takings case, like the one here, the measure of just compensation is the difference between the fair market value of the whole property before the taking and the fair market value of the remaining property after the taking. Sec. 32.09(6). Severance damages may be considered in determining the fair market value of the property immediately after the taking. See § 32.09(6)(e); WIS JI—CIVIL 8105. Severance damages, which must be distinguished from the value of the property actually taken, are defined as the

---

[2] We pause briefly to address the DOT's submission that the Alsums waived the question of whether there was evidence of comparable sales because the Alsums did not raise the issue before the trial court. The DOT is mistaken. In the Alsums' Memorandum in Opposition to DOT Motion to Dismiss, they specifically argued, "Since there are no comparable sales that can identify the difference between the before and after value of the Alsum farm, Cribben's use of the income approach should not be excluded." Thus, while the circuit court did not fully address the issue, the Alsums preserved the issue for appeal by raising it in their memorandum.

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

diminution in the fair market value of the remaining land that occurs because of the taking. *See* Wis JI—Civil 8105; § 32.09(6)(e).

¶ 13.   The three recognized methods of measuring fair market value before and after the taking are (1) the comparable sales approach, (2) the cost approach, and (3) the income approach. *Nat'l Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶ 23, 263 Wis. 2d 649, 665 N.W.2d 198. Evidence of net income is ordinarily inadmissible for purposes of establishing property values in condemnation cases involving commercial enterprises because business income is dependent upon too many variables to serve as a reliable guide for determining fair market value. *Leathem Smith Lodge, Inc. v. State*, 94 Wis. 2d 406, 413, 288 N.W.2d 808. However, there are exceptions to the general rule of inadmissibility of income evidence:   (1) when the character of the property is such that profits are produced without the labor and skill of the owner, (2) profits reflect the property's chief source of value, and (3) the property is so unique that comparable sales are unavailable. *Id.*

¶ 14.   As noted, the oft-cited general rule is that income evidence is never admissible where there is evidence of comparable sales. *Id.* at 413. Only "[w]here property is so unique as to make unavailable any comparable sales data[,] evidence of income has been accepted as a measure of value." *Id.* (citation omitted). Accordingly, we must first address whether there was evidence of comparable sales that would, without further inquiry, render Cribben's income analysis inadmissible.

¶ 15.   The question of whether the sales offered by the DOT are sufficiently comparable to provide a basis

for valuing the Alsums' farm is within the sound discretion of the circuit court. *See e.g., Rademann,* 252 Wis. 2d 191, ¶ 19; *Weeden v. City of Beloit,* 29 Wis. 2d 662, 668, 139 N.W.2d 616 (1966). Thus, a circuit court's determination of the acceptability of sales as comparables will not be reversed in the absence of clear error. *Rademann,* 252 Wis. 2d 191, ¶ 20.

¶ 16.   We will sustain the circuit court's discretionary decision if the court examined the relevant facts, applied the proper legal standard and used a rational process to reach a conclusion that a reasonable judge could reach. *See State v. Sullivan,* 216 Wis. 2d 768, 780–81, 576 N.W.2d 30 (1998). The record must reflect, however, "that discretion was exercised, including evidence that the trial judge undertook a reasonable inquiry and examination of the facts as the basis for his [or her] decision." *State v. Speer,* 176 Wis. 2d 1101, 1116, 501 N.W.2d 429 (1993).

¶ 17.   The circuit court simply stated that it found that there were comparable sales. The circuit court provided no reasoning for its decision. "When a circuit court fails to set forth its reasoning, appellate courts independently review the record to determine whether it provides a basis for the circuit court's exercise of discretion." *Sullivan,* 216 Wis. 2d at 781. Accordingly, we independently review the record to determine whether it provided a basis for the circuit court's exercise of discretion in admitting the DOT's comparable sales evidence. *See State v. Gray,* 225 Wis. 2d 39, 51, 590 N.W.2d 918 (1999).

¶ 18.  Evidence of the selling prices of comparable properties may be used for two purposes:  as substantive evidence to establish value or simply as evidence qualifying or showing foundation for an expert's opinion. *Calaway v. Brown County*, 202 Wis. 2d 736, 741–742, 553 N.W.2d 809 (Ct. App. 1996). When, as here, sales are offered as substantive evidence of property value, the other property must be closely comparable to the property being taken. That is, the properties must be located near each other and sufficiently similar in relevant market, usability, improvements and other characteristics so as to support a finding of comparability. *Id.* Thus, simply because the properties offered for comparison are similar in size to the property in question, does not mean that those properties are sufficiently comparable to establish value. A more thorough analysis is required.

¶ 19.  Here, the DOT's own appraiser characterized the Alsums' property as a terminal dairy farm; meaning that once the Alsums cease farming, the land will be converted to another use. This is primarily due to the fact that the DOT took a large percentage of the tillable acres of the farm and the land can no longer support a 50–stall dairy farm. Further, the Alsums' property is now severed into two distinct noncontiguous parcels; one of irregular shape and size that is ill suited for dairy farming. As a result, the operational capacity of the farm is reduced and access to the smaller parcel is more difficult. These factors clearly bear upon the property's usability, character and the market in which the property would be sold.

¶ 20.  The properties used for comparison in the DOT's expert's report were dairy farms. However, the record does not demonstrate that the farms were ter-

minal dairy farms nor does it demonstrate that the properties used were literally severed like the Alsums' property. It appears that the properties used were all contiguous operational dairy farms. We, therefore, cannot find any basis for the circuit court's discretionary determination that comparable sales were available.

¶ 21.  Because the circuit court provided no reasoning for its decision and we cannot find any basis in the record for the circuit court's exercise of discretion in admitting the comparable sales evidence, we remand the matter to the circuit court so that it may demonstrate, on the record, that it examined the relevant facts and applied the proper legal standard for comparable sales evidence to those facts.[4]

*By the Court.*—Order reversed and cause remanded with directions.

---

[4] We remind the circuit court that, if it concludes that the Alsums' property is unique and evidence of comparable sales is unavailable, the rule in Wisconsin is that income evidence is admissible. This is particularly true in cases involving farm land. In *Weyer v. Chicago, Wis. & N. R.R. Co.*, 68 Wis. 180, 180–84, 31 N.W. 710 (1887), a severance damage case involving the acquisition of a railroad right-of-way, the court stated, "[i]n estimating the value of farming land, its productiveness, or the income which may [be] derived from it, is always considered. Indeed, there is no better nor safer criterion than this to get at its real value." This holding has since been reaffirmed. *See Stolze v. Manitowoc Terminal Co.*, 100 Wis. 208, 214, 75 N.W. 987 (1898); *Lambrecht v. State Highway Comm'n of Wis.*, 34 Wis. 2d 218, 225–26, 148 N.W.2d 732 (1967).