Ronny Eaton and Deborah Eaton, Plaintiffs-Appellants,
v.
City of New Berlin, Defendant-Respondent.
No. 03-0899.
Court of Appeals of Wisconsin.
Opinion Filed: December 8, 2004.
Before Anderson, P.J., Brown and Nettesheim, JJ.
¶1 PER CURIAM.
This is an eminent domain case. Ronny and Deborah Eaton appeal from a judgment awarding $10,108 plus interest and costs to the City of New Berlin. The award was made after a trial to the court in which the trial court determined that the Eatons were entitled to $13,192 as just compensation for a seventeen-foot wide strip of land taken from them by the City on February 7, 2001. Because the City made a compensation award of $23,300 to the Eatons at the time of the taking, the trial court awarded the City the difference between the two amounts. We affirm the judgment.
¶2 The Eatons operate New Berlin Heating and Air Conditioning on a commercial lot adjacent to Sunny Slope Road in the City of New Berlin. The Eatons' commercial lot abuts a vacant residential lot owned by them. As part of a road improvement project, the City took a seventeen-foot wide strip of land which runs along Sunny Slope Road. The strip of land was part of an area used by New Berlin Heating and Air Conditioning for customer and employee parking, and for parking the company's vans. The strip totaled approximately 2,991 square feet of land.
¶3 After rejecting the City's compensation award of $23,300, the Eatons commenced this action in the circuit court pursuant to WIS. STAT. § 32.05(11) (2001-02).[1] The sole issue for trial was the amount of just compensation to be paid to the Eatons.
¶4 The standards governing the determination of just compensation are set forth in WIS. STAT. § 32.09. Alsum v. DOT, 2004 WI App 196, ¶12, No. 03-2563. As acknowledged by the parties, in a partial taking case like the one here, the measure of just compensation under § 32.09(6) is the difference between the fair market value of the whole property before the taking and the fair market value of the remaining property after the taking. See Alsum, 2004 WI App 196, ¶12. In determining the fair market value of the remainder immediately after the taking, effect must be given to the loss of land, including improvements. Sec. 32.09(6)(a). Severance damages may also be considered under § 32.09(6)(e) in determining the fair market value of the property immediately after the taking. Alsum, 2004 WI App 196, ¶12. "Severance damages, which must be distinguished from the value of the property actually taken, are defined as the diminution in the fair market value of the remaining land that occurs because of the taking." Id. (citations omitted).
¶5 The burden of proving the amount of just compensation in an eminent domain proceeding is on the landowner. Kirkpatrick v. DNR, 53 Wis. 2d 522, 530, 192 N.W.2d 856 (1972). We will not reverse factual determinations made by the trial court without a jury unless the trial court's findings are clearly erroneous. Noll v. Dimiceli's, Inc., 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). In addition, the weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the trial court acting as the trier of fact. Kleinstick v. Daleiden, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976).
¶6 The trial court determined that the Eatons were entitled to $13,192 as just compensation. In doing so, it found credible the testimony of Gene Bock, a real estate appraiser who testified on behalf of the City. Based upon his inspection of the property and comparable land sales, Bock valued the Eatons' commercial property at $224,700 before the taking. He testified that the land taken was worth approximately $3.80 per square foot, for a value of $11,365. He also determined that the Eatons were entitled to approximately $1,812 for the depreciated value of the asphalt taken. He arrived at an after-taking value of $208,900 for the Eatons' commercial property. After adding the cost of sign removal and replacement back into the after-taking value as determined by Bock, the trial court concluded that the Eatons were entitled to an award of $13,192.[2]
¶7 On appeal the Eatons do not challenge the value assigned by the trial court to the lost land and asphalt. However, they contend that the trial court erred by failing to also award them the cost of replacing parking which they allege was lost by the taking. They contend that they lost parking as a result of the taking, and that the loss reduced the fair market value of their remaining property. They contend that the cost of replacing the parking was a "cost to cure" which should have been included when determining severance damages under WIS. STAT. § 32.09(6)(e) and the after-taking value of their commercial property.
¶8 The Eatons are correct that when a partial taking causes damage to the remaining property, Wisconsin law permits the landowner to present evidence as to the anticipated cost of restoring the remaining property to its pre-damage state. See Ken-Crete Prods. Co. v. State Highway Comm'n, 24 Wis. 2d 355, 360-62, 129 N.W.2d 130 (1964). The "cost to cure" is not a separate item of damages to be awarded by the court. Instead, it is an element that the fact finder may consider in determining the value of the remaining property after the taking. See id. at 361-62.
¶9 In Ken-Crete, the landowner was a manufacturer of concrete blocks. Id. at 357. As part of a highway project, a county highway committee acquired the portion of the manufacturer's land used for storing sand and gravel for making the blocks. Id. at 356-57. After the taking the manufacturer leased land adjoining its premises for storage of the sand and gravel. Id. at 358. At trial, it presented expert testimony as to the cost of installing an overhead conveyor system to transport the sand and gravel from the stockpiles on the leased land to the manufacturing plant. Id. It also presented testimony from a real estate appraiser who testified as to the value of the premises before and after the taking, and indicated that a well-informed buyer would consult with such experts before making a decision to purchase the property. Id. at 358-59.
¶10 In permitting the expert testimony, the court noted that the testimony as to the advisability and cost of installing the overheard conveyor was not offered to establish a separate item of damages, but only as an element to be considered in arriving at the value of the remainder of the property after the taking. Id. at 360. It considered the amount of the "cost to cure" and stated that the underlying theory was that after the taking a prospective buyer would reduce what it would pay for the property by a comparable amount if the buyer concluded that it would have to expend that amount to continue to operate the facility at the same capacity as before the taking. Id. The court also indicated that the condemnor was entitled to present evidence as to less costly ways of repairing the damage to the remaining property. See id. at 362.
¶11 The Eatons contend that the trial court's decision implies that "cost to cure" can never be an element in determining the after-taking value of property in a partial taking. We disagree. The trial court stated that "I'm not satisfied that the traditional method of severance damages using the before and after rule is not wholly appropriate in this case." Taking into account its use of a double negative, we conclude that the trial court was properly stating that a compensation award had to be based on the difference between the value of the Eatons' commercial property before the taking and the value after the taking.
¶12 In addition, the trial court questioned counsel when it issued its oral decision, asking "What is the measure of damages, how the cost to cure may affect the overall valuation of the property, the fair market value of the property after the taking?" Its question reflected its correct understanding that evidence of the "cost to cure" is a factor in determining the after-taking value of property. The trial court subsequently discussed Ken-Crete, and its discussion reveals that it understood that "cost to cure" was properly considered in that case because it could reasonably be expected that anyone who purchased the manufacturing plant was going to have to expend the money for the overhead conveyor in order to use the plant for the same purpose. Consistently with Ken-Crete, the trial court also permitted the Eatons to present the testimony of architect John Curran concerning the cost of two alternative plans to replace parking, one costing $81,725 and using the adjacent residential lot, and the other replacing parking on the existing commercial lot at a cost of $16,000.
¶13 While the trial court considered that the cost of replacing parking could be an element in determining the after-taking value of the Eatons' property, it essentially concluded that the Eatons did not meet their burden of proving that it was necessary to replace the lost parking in order for their business to operate as it had before the taking, and to restore the commercial property to the value it had before the taking.[3] It also concluded that the Eatons failed to establish that it would cost $16,000 as testified by Curran to replace parking and restore the commercial property to its before-taking value.
¶14 In its oral decision, the trial court stated, "There is nothing in this record to establish that $16,000." While noting that the $16,000 represented the cost to re-establish a parking lot for customer, employee and company vehicles in a different location, it concluded that the Eatons had not reasonably established that "all this would be required by any new owner." After listening to the argument of Eatons' counsel, the trial court stated that "if ... cost to cure is a fact to be considered," the Eatons had failed to demonstrate it "to a requisite proof" and "the record does not support the necessity of such cost factoring in." The trial court then specifically found that the record was inadequate to prove that re-enlargement and repositioning of the parking lot was necessary, or that anything other than reconstruction of the surface area for parking was needed.
¶15 Based upon the record, the trial court could reasonably make this determination. Evidence indicated that before the taking, the Eatons could park approximately eight vehicles in the area adjacent to Sunny Slope Road. However, Ronny Eaton testified that the business averaged only twelve customers a day during the busy season, and only one or two customers a day during the nonbusy season. Based on the limited need for customer parking, the trial court could conclude that expanded and relocated parking as proposed by Curran was unnecessary for the Eatons to provide parking for their customers.
¶16 Evidence also indicated that the Eatons had only eight full-time employees and seven service vans. Evidence indicated that service vans and employees' vehicles could and did park in other areas of the commercial lot at times before the taking. Evidence also indicated that after the taking, a twentynine foot wide asphalt area remained between the main building and Sunny Slope Road. Even accounting for a ten-foot setback, a nineteen-foot wide asphalt area remained.
¶17 The trial court could reasonably conclude that the record did not establish that the number of vehicles which had to be parked at any one time could not be accommodated on the portion of the commercial lot remaining after the taking, or that if reconfiguring or resurfacing had to be done to accommodate them, it could not be done on the commercial property for much less than $16,000. Essentially, the trial court was entitled to find that the Eatons failed to establish that they needed to replace eight parking spots to operate their business, and that it would cost $16,000 to do so.[4] Similarly, the trial court was entitled to find that the Eatons failed to establish that a new buyer would not purchase their commercial property without expending $16,000 for new parking.[5]
¶18 Because the Eatons failed to clearly establish how much of an impact, if any, the loss of the seventeen-foot strip had on parking and the aftertaking value of the commercial lot, the trial court properly refused to reduce the after-taking value of the commercial property based on parking costs. Its judgment is therefore affirmed.[6]
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version.
[2] Bock mistakenly included the cost to the Eatons of removing and replacing a sign when calculating the after-taking value of the property. The trial court failed to include the cost of the sign removal and replacement in its final award because it is undisputed that the Eatons were responsible for the cost of removing and replacing the sign under a prior agreement with the City.
[3] We emphasize that the law as set forth in Ken-Crete Products Co. v. State Highway Commission, 24 Wis. 2d 355, 129 N.W.2d 130 (1964), represents the law in Wisconsin on "cost to cure." To the extent the City and trial court referred to 4A JULIUS L. SACKMAN & RUSSELL D. VAN BRUNT, NICHOLS ON EMINENT DOMAIN § 14A.04[2] (3rd ed. 2004), for a different standard for use of "cost to cure" evidence, they were incorrect. However, while Ken-Crete establishes that "cost to cure" is an element to consider in determining the after-taking value in a partial taking, it is subject to the requisite burden of proof. As properly determined by the trial court, the Eatons failed to meet their burden of proving the necessity for expending the alleged costs.
[4] Dennis Stefanik, the original negotiator for the City in this case, testified that in 1998 he estimated the cost of replacing eight parking spaces on the Eatons' commercial property at $9,750. The trial court was not required to reduce the after-taking value of the commercial property by this amount because no evidence established that this figure was valid at the time of the taking. In addition, the evidence did not establish that a future buyer would reduce the amount it was willing to pay for the commercial property by this amount.
[5] We recognize that the Eatons' appraiser, Ann Davis, testified that losing the seventeenfoot wide strip eliminated approximately seven parking spaces along Sunny Slope Road, and that the damage to the Eatons' property consisted of the lost property plus the estimated cost to replace the parking elsewhere. However, the only after-taking value provided by Davis combined the commercial property and the adjacent residential lot, even though the residential lot was not part of the taking. Davis provided no separate after-taking value for the commercial property. In addition, she declined to provide an opinion as to the after-taking value of the commercial property if parking was not replaced, or to personally provide an opinion as to what the actual "cost to cure" would be. Most importantly, she failed to provide an actual after-taking value for the commercial property which took into account the cost of replacing parking. She testified that she did not have the Curran plans at the time she prepared her appraisal and did not revise her appraisal after receiving Curran's estimates because cost estimates could vary considerably from one contractor to another.

Davis testified that before purchasing the property, a well-informed buyer would consult with a planner or architect to discuss the extent of the work necessary and the cost of restoring parking. However, since she failed to provide a clear after-taking value for the commercial property based upon a determination as to the actual diminution in value which a prospective buyer would attribute to the "cost to cure," the trial court reasonably declined to rely on her testimony to establish an after-taking value for the property.
[6] The Eatons also argue that they are entitled to recover the cost of replacing parking even though the City has not yet occupied the strip of land. However, the City does not contend on appeal that its failure to yet occupy the land affected the amount of compensation to which the Eatons were entitled. In addition, nothing in the trial court's decision indicates that this was a basis for the judgment. We therefore need not address this argument.