JAMES MADISON DEVELOPMENT CORPORATION, Appellant, v. STATE OF WISCONSIN BY CITY OF MADISON LAND ACQUISITION BOARD, Respondent.

*No. 169. Argued October 6, 1970.—Decided November 6, 1970.*
(Also reported in 180 N. W. 2d 597.)

---

[1] *See* sec. 251.93, Stats.

630

For the appellant there were briefs and oral argument by *Aubrey R. Fowler* of Madison.

For the respondent there was a brief by *Edwin Conrad,* Madison city attorney, and *Robert T. Semrad,* principal assistant city attorney, and oral argument by *Mr. Semrad.*

WILKIE, J. The primary issue presented on this appeal is whether there is any credible evidence to sustain the jury's verdict. There is. The test for our review in a condemnation award case of this sort has been well settled in *Weeden v. Beloit:* [1]

"In reviewing a jury verdict this court need only consider that evidence which supports the verdict. It is also clearly a rule of this court that a verdict should not be disturbed 'if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.' This approach is especially applicable when, as in the instant case, the trial court approved of the verdict. That this approach is equally applicable in condemnation cases is evident from the

[1] (1966), 29 Wis. 2d 662, 139 N. W. 2d 616.

following statement made by this court in affirming a jury verdict on a condemnation award:

" 'We must be mindful that the court below passed upon the matter under circumstances more favorable for arriving at a just result than are afforded here. To disturb the result would require overriding the conclusion of the jury, reinforced by that of the trial judge.'

"The instant case also presented the jury and the trial court with considerable conflicting expert testimony. It was the duty of the trier of the fact to determine the credibility of the witnesses and resolve the conflicting testimony. This rule is equally applicable in condemnation cases." [2]

As in *Weeden* the jury here heard conflicting expert testimony as to the value of the land in question and the proper methods and factors to be used and considered in arriving at the value. The jury's verdict was approved by the trial court and was "well within the range of values placed in evidence." [3]

Appellant presented three expert witnesses whose appraisals indicated values of $227,500 (in 1965), $275,000 and $260,000. Appellant also presented testimony of an official of a lending institution who allowed the previous owner of the property to mortgage the property at $135,000 in 1965, on the strength of the appraisal and the land contract, under its policy of allowing a maximum loan of 60 percent of value. Testimony of the former owner and of a major stockholder of appellant-corporation was presented as to the circumstances surrounding the 1965 land contract.

The only witness for respondent was Donald Evans, an appraiser. Evans testified that in his opinion the property had a fair market value of $200,000 as of June 5, 1968.

---

[2] *Id.* at pages 666, 667.

[3] *Id.* at page 669. *See also: Besnah v. Fond du Lac* (1967), 35 Wis. 2d 755, 760, 151 N. W. 2d 725.

Although appellant raises no issue as to the competency of respondent's witness, appellant seeks to destroy his opinion evidence as a matter of law for two reasons:

1. The law gives great weight to recent sales of the same property as compared to mere opinion.[4] The 1965 land contract price was $225,000, $25,000 higher than Evans' 1968 appraisal value of $200,000. Appellant argues that this 1965 price, when coupled with testimony of increasing property values in the area, renders Evans' opinion of little value, since his conclusion that the 1965 land contract price was inflated was based upon incorrect assumptions about the nature and effect of that contract.

2. Evans' 1968 appraisal itself was entitled to little weight since Evans "ignored" various factors necessary to an accurate appraisal and applied incorrect methods.

### The 1965 land contract.

Evans' appraisal indicated a value on the property of $200,000. He testified at length that using the cost-less-depreciation approach, a value of $198,000 was indicated, whereas the capitalization-of-income method reflected a value of only $191,500. Considering the market value of the property along with the other two approaches, his opinion was that the value of the property was greater than the value indicated by either of these other approaches and in his opinion was $200,000. He stated that the 1965 land contract included a premium of $25,000. He observed the very real probability that the property would be condemned and noted that most investors would assume that the most recent sale price would be the minimum condemnation offer. He contended that there were various features of the land contract which he felt indicated why a premium was paid,

---

[4] *Watson v. Milwaukee & Madison Ry.* (1883), 57 Wis. 332, 357, 15 N. W. 468.

noting especially (1) the low down payment of $500 ($100 per shareholder) ; (2) the monthly rental income which exceeded the amount of the monthly land contract payments; and (3) the condemnation clause which provided for a splitting of any loss resulting from condemnation between the seller and the purchaser.

Appellant contends that Evans was not aware that the shareholders individually guaranteed this land contract. On the strength of the individual guarantees, the seller was able to increase his mortgage by $55,000, giving him considerably more cash in hand than the mere $500 down payment. However, this in no way affects the actual down payment made by appellant. It still amounted to only $100 cash outlay for each shareholder-investor. This, combined with the rental income in excess of the land contract payments, would indicate how investors could hold the property until condemnation, and the condemnation clause was security against a loss. Should there be no condemnation, the parties might walk away if the seller concluded it would be more profitable for him to take back the property, or they could continue to rent the property, letting it pay for itself.

The weight to be accorded the appraisal offered by Evans was for the jury to determine. He gave his reasons for considering that a premium price was incorporated in the 1965 sale. These reasons constitute considerations why the full $225,000 price was inflated and above market. Appellant's contention that he considered some of these factors as possibilities (rather than probabilities) is beside the point because he was talking about reasons why the price was too high and not about his actual opinion as to appraised value.

*The validity of the 1968 appraisal.*

Appellant contends that the 1968 appraisal made by Evans shows that many factors were not considered

as required and that several errors were made by Evans in his computations. Among its contentions, appellant argues:

1. Evans ignored improvements made by Hendrickson just prior to his sale of the property to appellant in 1965.

2. "Mr. Evans also completely ignored the valuable lease rights of the appellant with the Milwaukee Road."

3. "Mr. Evans erred in believing that the property was vacant after 1965."

4. Evans' 1967 appraisal report contained an error of $142,000, which was subsequently corrected. The appraised value was still the same—$200,000.

5. In the 1967 appraisal Evans used the 1967 real estate taxes; in June, 1968, he used the 1968 taxes, although the necessary tax information was not available until November or December.

6. Evans ignored the WARF letter of April 24, 1968.

7. Evans used an incorrect depreciation factor of 42 percent.

We have examined the record in detail and are satisfied that there is no merit in any of these assertions or indeed in any others made by appellant. Appellant argues that although Evans used two comparable sales, he neglected to use later sales of the same properties closer in time to the condemnation. With reference to the "Century House" property the later sale was not used because it involved what Evans thought was "a holdup price" following from the fact that this last piece of property was necessary to complete the acquisition of property for a planned project. With respect to the "Lombardino" property, the later price on this parcel was considered by Evans to be slightly inflated since the purchaser was in need of parking contiguous to his business. In addition, this sale occurred after the date of taking here.

In the end, the jury did not award $200,000 as per the Evans' appraisal, but $220,900, which clearly indi-

cates it gave consideration to the appraisals made by appellant's experts as well as to the opinion of Mr. Evans. The jury must have made some adjustments in his figures. Thus, the verdict, by any reasonable view of the credible evidence presented, is amply supported and is well within the range of values established by the valid expert opinion before the jury.

As a second issue on this appeal, appellant urges that the trial court's decision on motions after verdict indicates "that the judge had made his mind up before the motions were presented." This argument is without merit.

*By the Court.*—Judgment affirmed.