David GEISE,
Plaintiff-Respondent-Cross-Appellant,

v.

AMERICAN TRANSMISSION COMPANY LLC,
by its corporate manager, ATC Management Inc.,
Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 2011AP482. Submitted on briefs June 8, 2012.*
*—Decided June 12, 2014.*

2014 WI App 72

(Also reported in 853 N.W.2d 564.)

454

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Katherine Stadler* and *Patricia L. Wheeler* of *Godfrey & Kahn, S.C.*, Madison.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Frank Jablonski* of Progressive Law Group, LLC, Madison.

Before Lundsten, Higginbotham and Sherman, JJ.

¶ 1. HIGGINBOTHAM, J. This is an eminent domain case involving a taking by American Transmission Company LLC, and ATC Management Inc. (ATC) of 2.89 acres owned by Geise for an electric transmission line project. ATC appeals the circuit court's denial of ATC's motion to set aside the jury's verdict on the ground that the jury's verdict was not supported by any credible evidence, and that the jury ignored the court's jury instruction not to speculate about damages not in evidence. For the reasons that follow, we conclude that credible evidence supports the jury's verdict and that

ATC has failed to show that the jury disregarded the court's jury instruction. We therefore affirm the court's order denying ATC's motion to set aside the verdict.

¶ 2. Geise cross-appeals the circuit court's denial of his request for post-judgment interest. Geise argues that the circuit court's construction of WIS. STAT. § 32.06(10)(d) (2011–12)[2] governing the award of post-judgment interest in non-transportation condemnation proceedings was unreasonable and that, properly read, Geise is entitled to post-judgment interest under the statute. We agree and reverse the circuit court's denial of post-judgment interest and remand to the court to determine the amount of post-judgment interest due Geise under the proper construction of § 32.06(10)(d).

## BACKGROUND

¶ 3. Geise owns a 119.94 acre parcel of land in the Town of Waterloo. The property is zoned as an exclusive agricultural district and contains a residence, barn, silo, and other outbuildings.

¶ 4. ATC made a jurisdictional offer to Geise to acquire two easements, totaling 2.89 acres, for the construction and maintenance of a 138 kilovolt electric transmission line on Geise's property. Geise rejected the offer. ATC filed a verified petition with the Jefferson County condemnation commission for condemnation proceedings to acquire the easements. Following a hearing, the condemnation commission awarded Geise the amount that would represent just compensation for ATC's taking of easements by condemnation. Geise appealed the award of the condemnation commission to the circuit court.

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 5. A three-day jury trial was held to determine the fair market value of Geise's property before and after the taking. Three expert witnesses testified at trial. Geise's only expert witness, Kurt Kielisch, testified that the value of the property before the taking was $995,000 and the value of the property after the taking was $880,000, and therefore the difference between the values was $115,000. ATC's expert witnesses, Aari Roberts and Scott MacWilliams, testified that the value before the taking was $939,300 and $880,200, and the value after the taking was $929,200 and $869,600, respectively. Thus, according to Roberts and MacWilliams, the difference between the before- and after-taking values of the property was $10,100 and $10,600, respectively. The evidence underlying the experts' opinions was primarily based on the sales comparison approach to property valuation, which "relies on comparing similar properties to the subject and adjusting them for differences."[3] *Johnson v. City of Greenfield Bd. of Review*, 2005 WI App 156, ¶ 7 n.2, 284 Wis. 2d 805, 702 N.W.2d 460 (quoting another source).

¶ 6. At one point during the trial, a juror submitted a question to the court, asking whether Geise had previously received any compensation for, among other things, any "loss of use of [the] land" or "inconvenience." The juror also asked whether the jury's role was to determine "everything" for which Geise "should be compensated." With the approval of both parties, the court added to the end of two parts of a standard jury instruction that the jury should not "speculate about any damages which were not in evidence."

---

[3] Geise's expert, Kurt Kielisch, also appraised Geise's property by using the cost approach, which focuses on valuing the property's improvements, and testified about his results using that approach. However, Kielisch ultimately determined the value of Geise's property using the comparable sales approach.

¶ 7.   The jury was asked in a special verdict to find the fair market value of Geise's property immediately before and immediately after the taking. The jury found that the value of the property before the taking was $1,176,580 and the value after the taking was $1,069,407, which resulted in an award in favor of Geise in the amount of $107,173.

¶ 8.   ATC moved the circuit court to set aside the verdict and order a new trial. ATC primarily argued that the verdict was not supported by credible evidence because the jury's findings on value were not within the range of values placed in evidence. The court denied the motion on the grounds that: (1) the jury's findings were not "outrageous" because the jury was permitted to weigh the comparable sales evidence on which the experts based their opinions and to make adjustments to that evidence; and (2) Geise's "ultimate award," the difference between the jury's two findings, was within the range of the expert testimony.

¶ 9.   Geise subsequently petitioned for an award of litigation expenses, including post-judgment interest. The circuit court entered an order denying Geise post-judgment interest under WIS. STAT. § 32.06(10)(d). The court interpreted § 32.06(10)(d) to mean that a party is not entitled to post-judgment interest where, as here, an appeal is taken to this court in a condemnation proceeding not involving transportation matters. Geise moved for reconsideration. The court denied the motion and entered an order for judgment. Geise cross-appeals.

## DISCUSSION

I.   ATC's Appeal

A.   Credible Evidence Supports the Verdict

¶ 10.   ATC argues that the jury's verdict is not supported by any credible evidence and therefore the

verdict must be set aside. Specifically, ATC argues that the only credible evidence admitted at trial was provided by the expert appraisers, and that, because the jury's before- and after-taking values did not fall within the range of values offered by the experts, the jury's verdict is not supported by any credible evidence as a matter of law. In support, ATC cites cases where the court sustained jury verdicts in which the jury found that the fair market value of the subject property was somewhere in between the values offered by the experts and thus "within the range of values" in evidence. *See Weeden v. City of Beloit*, 29 Wis. 2d 662, 669, 139 N.W.2d 616 (1966) (sustaining verdict where the fair market value "arrived at [by the jury] was well within the range of values placed in evidence"); *see also James Madison Dev. Corp. v. State*, 48 Wis. 2d 629, 637, 180 N.W.2d 597 (1970) (sustaining verdict that was "amply supported and . . . well within the range of values established by the valid expert opinion before the jury"). Because the values found by the jury exceed the values offered by the expert appraisers, ATC maintains that the jury ignored all of the credible evidence and instead "created its own wholly new opinion on value—one with absolutely no support in the record."

¶ 11. In response, Geise argues that there was substantial credible evidence to support the jury's values. Geise argues that the jury was "not limited to considering only the ultimate opinions of expert appraisers as to fair market value" but instead could "consider and weigh all evidence" admitted at trial, including the comparable sales evidence on which the experts based their opinions, quoting *Milwaukee Rescue Mission, Inc. v. Redevelopment Authority*, 161 Wis. 2d 472, 486, 468 N.W.2d 663 (1991). Geise also argues that the jury was not required to accept the

adjustments to the comparable sales evidence made by the experts, but instead could make its *own* adjustments to the evidence because "[d]oing so is the essence of what it means to 'weigh' evidence." Geise further argues that the cases cited by ATC do not establish a rule that the before- and after-taking values found by the jury must fall within the range of values offered by the experts in order to be supported by credible evidence.

¶ 12. The scope of our review of a jury's verdict was summarized in *D.L. Anderson's Lakeside Leisure Co. v. Anderson*, 2008 WI 126, ¶ 22, 314 Wis. 2d 560, 757 N.W.2d 803:

> When reviewing a jury verdict, we affirm if the record contains any credible evidence to support the verdict; this is even more true when the trial court gives its explicit approval to the verdict by considering and denying postverdict motions. The reviewing court has a duty to search for credible evidence to sustain the jury's verdict. We afford special deference to a jury determination in those situations in which the trial court approves the finding of a jury. In such cases, this court will not overturn the jury's verdict unless there is such a complete failure of proof that the verdict must be based on speculation. A challenge to the sufficiency of the evidence is evaluated in light of the jury instructions.

(citations and quotations omitted). This standard of review is applicable in condemnation cases. *Weeden*, 29 Wis. 2d at 666.

¶ 13. The jury in this case heard conflicting expert testimony regarding the fair market value of Geise's property. The jury, as the trier of fact, "determines the credibility of the witnesses, resolves conflicts

in the testimony, weighs the evidence and draws reasonable inferences from the evidence." *State v. Johannes*, 229 Wis. 2d 215, 222, 598 N.W.2d 299 (Ct. App. 1999). The jury is not bound by expert opinions; rather, it can accept or reject an expert's opinion. *State v. Kienitz*, 227 Wis. 2d 423, 438, 597 N.W.2d 712 (1999); *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50 (Ct. App. 1996) (trier of fact may accept certain portions of an expert's testimony while disregarding other portions); Wis JI—Civil 260 (jury "not bound by any expert's opinion").

¶ 14. We conclude that the verdict need not be set aside on the ground that the before- and after-taking values arrived at by the jury exceed the values offered by the experts. It is true that, in the cases cited by ATC, the supreme court noted that the values arrived at by the jury were within the range of values offered by the expert appraisers, and indicated that this provided support for sustaining the verdicts. However, the court did not hold that a jury verdict setting the value of property may be sustained *only* where the values found by the jury are within the range of values offered by the experts. Indeed, case law demonstrates there is no such limitation: "the jury should not be limited to the range of fair market values supplied by appraisal experts." *Milwaukee Rescue Mission*, 161 Wis. 2d at 486; *see also Hurkman v. State*, 24 Wis. 2d 634, 639, 641–42, 130 N.W.2d 244 (1964) (sustaining verdict where after-taking value found by the jury was below the range established by the testimony of the appraisal experts). Accordingly, we reject ATC's contention that a verdict must be set aside where the values arrived at by the jury exceed the values offered by the expert appraisers.

¶ 15.    We also agree with Geise that the jury was free to weigh all of the evidence admitted at trial. Here, that evidence included the experts' testimony and appraisal reports, in which the experts compared Geise's property to various other properties and made numerous adjustments to account for what the experts determined to be differences between the properties. It was "the function of the jury to evaluate the foundation for the expert's opinion and to accord to that opinion such weight as the jury deem[ed] appropriate." *Herro v. DNR*, 67 Wis. 2d 407, 422, 227 N.W.2d 456 (1975). The jury was "free to accept or reject the judgment of the expert as to what sales [were] comparable or as to how they should be adjusted if not strictly comparable." *Id.* Thus, the jury was permitted to accept or reject the figures the experts used in determining the value of Geise's property and to make adjustments to those figures based on its own view of the evidence. The precise figures arrived at by the jury indicate that the jury made adjustments based on its own view of the comparability of various comparable properties in evidence.

¶ 16.    Indeed, the trial court instructed the jury that it was permitted to consider the comparable sales evidence relied on by the experts in determining the fair market value of Geise's property:

> In determining fair market value, you may consider the price and other terms and circumstances of any good faith sale of comparable property. A sale is comparable if it was made within a reasonable time before or after May 18, 2009 [the date ATC filed a verified petition for condemnation proceedings], and if that property is sufficiently-similar with respect to . . . location, situation, usability, improvements and other characteristics to warrant a reasonable belief that it is comparable to the property being valued.

> You are to consider all of the elements of similarity and dissimilarity in deciding whether the other sales assist you in determining the fair market value of the property on May 18, 2009, and/or the fair market value of the remaining property immediately after that date as if the public project had been completed by that date.

*See* WIS JI—CIVIL 8120.

¶ 17. The jury was also instructed that "[i]n weighing the evidence," it could "take into account matters of . . . common knowledge and . . . observations and experiences in the affairs of life." Thus, the jury was not required to accept an expert's opinion as to what increases or decreases the value of a particular property but rather could consider its own observations and experiences regarding what makes a property more or less valuable. Here, the jury could have determined that Geise's property had distinctive features that made it more valuable than the properties that the experts compared to Geise's property and thus made adjustments, taking into account its own observations and experiences regarding the value of those distinctive features.

¶ 18. What ATC appears to be really arguing is that the jury verdict cannot be sustained because the jury's interpretation of the credible evidence does not comport with the experts' interpretation of that evidence. However, as we have explained, the jury was not required to weigh the evidence as any of the experts did.

■

¶ 19. Additionally, it is the burden of the party challenging the verdict to explain why there is no credible evidence to support the jury's verdict. ATC has not met its burden here. As we have explained, ATC's only argument in its brief-in-chief—that the verdict was not supported by credible evidence because the

values arrived at by the jury were higher than the values offered by the experts—lacks merit. ATC does not discuss the comparable sales evidence on which the experts' opinions were based or explain why the jury could not reach its values based on its own view of that evidence.

¶ 20.   However, ATC contends in its reply brief that the comparable sales evidence could not be considered by the jury as direct evidence of the value of Geise's property because, according to ATC, Geise failed to lay a proper foundation to show that the allegedly comparable properties relied on by the experts were in fact comparable to Geise's property. Instead, ATC quotes *Calaway v. Brown County*, 202 Wis. 2d 736, 741, 553 N.W.2d 809 (Ct. App. 1996), for the proposition that such evidence could be considered only for the "limited purpose of showing a basis for and giving weight to the opinion of value of an expert witness." We reject this argument.

■

¶ 21.   The trial transcript does not support ATC's assertion that Geise failed to lay a foundation for the introduction of the comparable sales evidence as direct evidence of the fair market value of Geise's property. Kielisch provided substantial testimony about numerous properties he determined to be comparable to Geise's property and the factors he considered in making that determination, such as the location and size of the property, the date of the sale, and the characteristics of the land involved.

¶ 22.   In sum, we conclude that ATC has not shown that the verdict was not supported by any credible evidence.[4] The jury was free to consider all of

---

[4] ATC also argues that Geise's own testimony did not provide credible evidence to support the verdict because Geise had no basis for his opinion, as required under *Genge v. City of*

the evidence admitted at trial, including the comparable sales evidence on which the experts based their ultimate opinions, and make adjustments to reflect its own view of the evidence. Accordingly, the circuit court did not err in denying the motion to set aside the verdict.

### B. The Jury Did Not Ignore the Court's Instruction

■

¶ 23. ATC argues that the jury must have ignored the court's instruction not to speculate about damages not in evidence. In support, ATC points to a juror's questions to the court and reasserts that there is no credible evidence to support the verdict. We understand ATC to argue that, because the jury's values exceed the values presented by the experts, the jury must have ignored the court's instruction and considered impermissible factors such as "inconvenience." This argument lacks merit.

¶ 24. At trial, while the jury was taking a break after Geise's cross-examination of MacWilliams and before ATC's redirect examination, the court received a note from a juror, stating:

> Has Mr. Geise *previously* received any compensation for *any* of the elements being considered today from ATC?
>
> Example:
>
> • Loss Of Use Of Land

*Baraboo*, 72 Wis. 2d 531, 536–37, 241 N.W.2d 183 (1976). We do not address this argument because, as we have concluded, the jury could reasonably reach its findings upon weighing all of the evidence underlying the experts' opinions and making its own adjustments to that evidence.

467

- Easement Taking
- Trees
- Asthetics [sic]
- Inconvenience

Foundation:

> Are we determining *EVERYTHING* that should be compensated, or was [Geise] already compensated for a percentage or portion or other loss?

¶ 25.   The court conferred with ATC and Geise on how to respond to the juror's questions. The court proposed, and the parties agreed, to add the following language to the end of two parts of a standard jury instruction: "nor should you speculate about any damages which were not in evidence."

¶ 26.   ATC's contention that the jury must have ignored the circuit court's admonition not to speculate about damages not in evidence hinges entirely on its first argument that the jury's verdict was not supported by any credible evidence. We have already rejected that argument. Moreover, it is presumed that jurors follow the jury instructions given by the court. *State v. LaCount*, 2008 WI 59, ¶ 23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶ 27.   Furthermore, at least some of the factors the jury inquired about are appropriate for the jury's consideration in determining fair market value, such as the value of the trees that were removed after the taking. *See Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 15, 281 Wis. 2d 173, 696 N.W.2d 194 ("any factor affecting the value of property that could influence or sway the decision of a prospective buyer should be

considered in the valuation of property in a condemnation proceeding"). Also, ATC offers no basis to support its position that the jury must have considered the inconvenience of the condemnation process on Geise in setting fair market value.

¶ 28. In sum, we conclude that ATC has failed to show that the jury ignored the circuit court's jury instruction not to speculate about damages not in evidence.

## II.  Geise's Cross-Appeal

¶ 29. On cross-appeal, the parties dispute whether the circuit court erred in denying post-judgment interest to Geise under WIS. STAT. § 32.06(10)(d). The circuit court determined that, under § 32.06(10)(d), "interest has and does not accrue on the judgment amount (total awarded by jury plus costs of litigation) as a result of ATC's appeal, which has been filed." This is an issue of first impression.

¶ 30. To resolve the parties' dispute, we must engage in statutory interpretation. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting another source). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its

meaning." *Id.*, ¶ 46 (quoting another source). Statutory interpretation presents a question of law, subject to de novo review. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 26, 299 Wis. 2d 561, 729 N.W.2d 396.

¶ 31.   WISCONSIN STAT. § 32.06(10)(a)-(d) governs a party's obligation to pay a judgment and interest in a condemnation proceeding not involving transportation matters. The provision at issue here, § 32.06(10)(d), regarding post-judgment interest, provides in full:

> All judgments required to be paid shall be paid within 60 days after entry of judgment unless within this period appeal is taken to the court of appeals or unless condemnor has petitioned for and been granted an order abandoning the condemnation proceeding. Otherwise such judgment shall bear interest from the date of entry of judgment at the rate of 10% per year until payment.

¶ 32.   Geise argues that he is entitled to post-judgment interest under WIS. STAT. § 32.06(10)(d). Geise contends that the only reasonable construction of the statute is that: (1) a judgment required to be paid must be paid within sixty days after entry of the judgment; (2) "otherwise"—meaning that if the judgment is not paid within that sixty day period—the judgment bears interest from the date of entry of judgment at a rate of ten percent per year until the judgment is paid in full; and (3) the sixty-day time period for paying a judgment is tolled if (a) an appeal is taken to the court of appeals within that sixty-day period, or (b) the condemnor petitions for and is granted an order abandoning the condemnation proceeding. Geise contends that the construction adopted by the circuit court produces an absurd result because it

permits the losing party in the circuit court "to avoid post-judgment interest, simply by filing an appeal."[5]

¶ 33. In response, ATC argues that WIS. STAT. § 32.06(10)(d) tolls the accrual of interest on a judgment during the pendency of an appeal. ATC reads the statute in this way:

> [T]he judgment is to be paid within 60 days after the entry of judgment, *unless* 1) there is an appeal to the court of appeals within that 60 day period, or 2) the condemnor petitions for and is granted an order abandoning the condemnation proceedings. 'Otherwise,'— that is, if there is no appeal or abandonment of the condemnation proceeding—'such judgment shall bear interest from the date of entry of judgment at the rate of 10% per year until payment.' WIS. STAT. § 32.06(10)(d).

Although ATC refers to "tolling" and appears to additionally argue that the statute *tolls* the accrual of interest during the pendency of an appeal, ATC's interpretation of the statute does not support its assertion that an appeal does not eliminate the interest requirement, but rather tolls interest during the pendency of an appeal.[6] Rather, under ATC's reading, nothing in the statute requires interest at all when an appeal is taken within sixty days. Under ATC's reading, the interest provision kicks in only if there is no timely appeal.

¶ 34. We conclude that the only reasonable way to read WIS. STAT. § 32.06(10)(d) is that: (1) a party re-

---

[5] Geise makes other arguments in support of his contention that he is entitled to post-judgment interest under WIS. STAT. § 32.06(10)(d). However, we need not address those arguments to resolve this appeal.

[6] We note that ATC refers to "tolling," but we find no place in ATC's briefing where it explains how tolling is supported by statutory language.

quired to pay a judgment must pay the judgment within sixty days after entry of judgment; (2) a party need not pay a judgment within that sixty-day period if the judgment is appealed to this court within that period or a condemnor petitions for and obtains an order to abandon the condemnation proceeding; and (3) if a judgment required to be paid is not paid within that period, the judgment bears interest from the date of entry of judgment at a rate of ten percent per year until the judgment is paid in full (if that judgment is not reversed on appeal). Thus, we read the statute to mean that a judgment that is appealed within sixty days after entry of judgment does not have to be paid within that time period; however, the judgment nonetheless bears interest from the date of entry of judgment if it is not paid within that time period, assuming the judgment, or some portion of it, is upheld on appeal. The necessary result of this reading is that interest accrues during the pendency of an appeal and post-judgment interest must be paid.

¶ 35. Our construction of WIS. STAT. § 32.06(10)(d) is the only reasonable construction because it avoids an absurd result. Particularly as to large judgments, our construction avoids providing an incentive to the losing party in the circuit court to appeal a judgment on any non-frivolous ground, no matter how weak, to avoid paying post-judgment interest. Under ATC's construction, a party obligated to pay a large judgment would have little, if any, reason not to file an appeal, even where the appeal has little merit and thus has the potential to waste judicial time and resources. Indeed, so far as we can tell, under ATC's construction, a losing party could file an appeal, meritorious or not, thereby avoiding the interest provision, and later voluntarily dismiss the appeal.

¶ 36. Moreover, our construction fulfills the legislative purpose behind the statutory provisions in Wis. STAT. ch. 32, which is to justly compensate owners for the taking of their property by condemnation and thus to make them whole. *See Standard Theaters, Inc. v. State*, 118 Wis. 2d 730, 744–45, 349 N.W.2d 661 (1984). Post-judgment interest in a condemnation proceeding, such as this, is part of the just compensation to which a condemnee is entitled. *See W.H. Pugh Coal Co. v. State*, 157 Wis. 2d 620, 633, 460 N.W.2d 787 (Ct. App. 1990). "[J]ust compensation is for property presently taken and necessarily means the property's present value, presently paid—not its present value to be paid at some future time without interest." *Id.* (quoting another source). Our construction ensures that the condemnee is awarded just compensation for the taking of his or her property and thus comports with the purpose behind ch. 32.

¶ 37. ATC argues that Geise's construction of Wis. STAT. § 32.06(10)(d), which we adopt, is absurd and unreasonable. In support, ATC argues that Geise's reading of "otherwise" would require a condemnor to pay post-judgment interest, even where the condemnor petitioned for and obtained an order to abandon the condemnation proceeding. We reject this argument.

¶ 38. A party that prevails in the circuit court is entitled to post-judgment interest only where a judgment *required* to be paid is not paid within sixty days after entry of judgment. Where the condemnor petitions for and obtains an order to abandon the condemnation proceeding, the condemnor is not required to pay the judgment. This is a matter of common sense. A condemnor who is granted an order to abandon the proceeding has not taken any property and thus owes

no compensation to the condemnee. Because no compensation is owed to the condemnee, the judgment is not required to be paid and thus there is no judgment on which interest accrues.[7]

¶ 39. ATC also argues that Geise's construction of the statute is absurd because, under that construction, the party that prevails in the circuit court is entitled to post-judgment interest even when the judgment is overturned on appeal. However, as we explained above, a party is only entitled to post-judgment interest where the judgment is required to be paid, and, also as a matter of common sense, a judgment that is overturned on appeal is not required to be paid and thus does not bear interest.

¶ 40. In sum, we agree that Geise's construction of Wis. Stat. § 32.06(10)(d) is the only reasonable construction of the statute and therefore reverse the circuit court's order denying post-judgment interest to Geise. We remand to the circuit court to determine the amount of post-judgment interest due Geise under the proper construction of Wis. Stat. § 32.06(10)(d).

*By the Court.*—Order affirmed; order reversed and cause remanded with directions.

---

[7] We note, however, that a condemnee may be awarded litigation expenses in an abandoned condemnation proceeding. Wis. Stat. § 32.28(3)(a). We also note that a court may grant a condemnor's petition to abandon the condemnation proceeding "upon such terms as it deems just." Wis. Stat. § 32.06(9)(a).