COURT OF APPEALS
DECISION
DATED AND FILED

February 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP919**

Cir. Ct. No. **2021TR4801**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

COUNTY OF WAUKESHA,

   PLAINTIFF-RESPONDENT,

V.

JACOB A. VECITIS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: DENNIS P. MORONEY, Reserve Judge. *Affirmed.*

¶1     LAZAR, J.[1]  Jacob A. Vecitis appeals from a judgment against him for first offense operating a motor vehicle while intoxicated (OWI) after a trial to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

the court[2] and from an order denying his motion for reconsideration. Vecitis asserts that evidence in the Record—namely that blood in his mouth and the tester's use of an alcohol-based hand sanitizer immediately prior to administering his breath test—establishes that the breath test result in his case was scientifically unreliable. This court concludes that the factual findings made by the trial court were not clearly erroneous and, given those facts (both expressly made and reasonably inferred), the Intoximeter breath test established that Vecitis had a blood alcohol concentration above the legal limit. Vecitis was thus appropriately found guilty of operating a motor vehicle while under the influence of an intoxicant. Moreover, the trial court did not erroneously exercise its discretion in denying Vecitis's motion for reconsideration. This court affirms.

## BACKGROUND

¶2 Vecitis allegedly lost consciousness as he switched lanes while driving on Interstate 94, causing his vehicle to roll over. The accident resulted in injuries to his head when his vehicle was pinned against a pole on the side of the freeway. Various witnesses testified about the facts related to this single-vehicle accident and leading up to Vecitis's arrest.

¶3 Waukesha County Sheriff Deputy Keith McDonald made contact with Vecitis at the crash site. He testified that he noticed the injuries to Vecitis's head—though Vecitis refused medical attention from the EMS staff on the scene—and noticed "a mild odor of intoxicants coming from his breath." Vecitis told McDonald that he had consumed two drinks that afternoon. He refused to do

---

[2] The Honorable Dennis P. Moroney, reserve judge, conducted both the trial and subsequent motion for reconsideration.

standardized field sobriety tests out of a claimed concern that his head trauma might make such tests unreliable. McDonald then arrested Vecitis and transported him to the sheriff's department for breath alcohol testing. Prior to testing, in accordance with his training, McDonald observed Vecitis for twenty minutes, during which time Vecitis did not smoke, regurgitate, vomit, or drink alcoholic beverages. McDonald had no indication at that time that Vecitis had any blood in his mouth or was bleeding inside his mouth.

¶4 Deputy Shannon Fettig conducted Vecitis's breath test at the sheriff's department using an Intoximeter EC/IR II device. Following the protocol set forth by the state and after being advised that McDonald had already conducted the required twenty-minute observation, she performed: (1) a diagnostic test to check internal functioning of the instrument (which passed); (2) a "blank check" to ensure that there was no alcohol in the ambient air in and around the device (which resulted in a reading of 0.000); (3) a test of Vecitis's first breath sample (which resulted in a reading of 0.124); (4) another blank check (which resulted in a reading of 0.000); 5) an accuracy check of a dry gas target (which conformed with requirements); (6) another blank check (which resulted in a reading of 0.000); (7) a test of Vecitis's second breath sample (which resulted in a reading of 0.127); (8) a final blank check (which resulted in a reading of 0.000); and (9) a final diagnostics test (which passed). Either right before or right after the first diagnostic test, Fettig applied hand sanitizer to her hands. Though she did not touch the mouthpiece into which Vecitis blew with her hands, she wondered aloud

to Vecitis and McDonald, who was observing the test, whether the hand sanitizer might affect the result of the breath test.[3]

¶5      The County also called Therese Sanders, an employee of the state's Department of Transportation who specializes in breath tests for alcohol and whose responsibilities include maintaining breath testing equipment and training others to use this equipment.  She described the safeguards implemented to ensure that readings from the breath testing devices in the state are accurate, including the twenty-minute "close and scrutinous" observation period, two breath samples that must correlate, and the various blank checks and diagnostic tests described by McDonald and Fettig.  She also testified that "with any … OWI investigation, an officer would be required to do a mouth check to ensure that there's no foreign objects in the mouth that could possibly contaminate [the] breath sample." Sanders explained that the blank checks draw air into the Intoximeter and that would include a check of "the air within the instrument, as well as around the instrument," and that if any of the four blank checks result in a reading greater than zero, the testing will not proceed.  Sanders testified that, based on the maintenance of the Intoximeter, "the instrument was accurate for breath alcohol testing" and that the "subject test record is a valid and accurate test."

¶6      Sanders agreed that WIS. ADMIN. CODE § TRANS 311.06(1) (Jan. 1985) states that "[o]nly methods approved by the department may be used to perform quantitative breath analysis" to determine the alcohol content and that § TRANS. 311.06(3)(a) includes the requirement that the "test subject shall not

---

[3] Fettig did explain that the Intoximeter tested ambient air in the "blank checks" that are run pursuant to protocol.

ingest alcohol, regurgitate, vomit, or smoke" during the twenty-minute observation period prior to testing. Although she agreed that the dictionary with which she was presented included "inhalation" in the definition of "ingestion," she testified that she considered "ingestion" to be "eating" because "scientifically, [she] wouldn't utilize that term" for "inhalation."

¶7 Vecitis testified in his own defense. He explained that he suffered from a heart condition known as a "syncope" that had caused him to lose consciousness while driving on two different occasions—once when he was sixteen years old and then eight years later, causing the accident described above. He had received medical attention for his condition and had a monitor implanted in his heart prior to trial. Vecitis admitted to consuming two drinks prior to driving on the day of the accident, but denied that he felt any effects of alcohol when he was getting into his car. He testified that he was bleeding from his head and inside his mouth after the accident. In recounting his breath test at the sheriff's department, he recalled having blood in his mouth and the "strong odor" of an alcohol-based hand sanitizer when Fettig was administering the test, an odor that he claimed pervaded the room for the duration of the test.

¶8 Vecitis also called in his defense an expert witness, Ronald E. Henson, Ph.D., who has expertise in alcohol physiology and pharmacology and in the Intoximeter EC/IR II device used in Vecitis's case. Henson testified that he had reviewed all of the law enforcement reports and video of the accident scene and that he had conducted a review of the professional literature on the effects of both hand sanitizer inhalation and blood in the oral cavity on alcohol breath testing. With respect to the hand sanitizer applied by Fettig in this case, it was Henson's opinion that the testing device would not have detected the vapors from the sanitizer while testing the ambient air, but that alcohol molecules from the

sanitizer would have contaminated the device and would have been inhaled by Vecitis, rendering the results of the test scientifically unreliable and higher than the actual concentration of alcohol in his blood from drinking. He also testified that if a subject consumed alcohol within the three hours preceding a breath test as Vecitis had, any blood in the oral cavity would contaminate the test and have an additional compounding effect, leading to an inaccurately high result. Henson also testified that, based on his extensive training and research, a valid test of .12 blood alcohol concentration is not enough to render someone unconscious. Henson was not asked if a combination of .12 blood alcohol concentration together with medical syncope could render someone unconscious.

¶9    In closing, the County argued that it had proved the Intoximeter used to test Vecitis's breath was in proper working order and operated by a qualified individual and that, if there had been any alcohol in the air from the hand sanitizer, the instrument would not have passed its diagnostic tests and blank checks. Vecitis argued that the breath test at issue was not administered according to WIS. ADMIN. CODE § TRANS 311.06 because Vecitis ingested alcohol—he inhaled vapor from the hand sanitizer—within the twenty minutes prior to his test, and that the trial court should not admit evidence from that test because it was irrelevant, citing *City of New Berlin v. Wertz*, 105 Wis. 2d 670, 314 N.W.2d 911 (Ct. App. 1981). Although the test result may have been prima facie evidence of impairment, he contended, "[i]t is not good enough after Dr. Henson's testimony explains why the [§ TRANS 311.06] requirement has to be followed meticulously for this highly sensitive device to be accurate." He argued that both the hand sanitizer and blood in Vecitis's mouth were legitimate issues that called into question the accuracy of the breath test.

¶10    The trial court found Vecitis guilty of OWI.  The court found as factual matters that the accident described above happened when Vecitis "was in the middle lane of traffic" and "attempted to get off of I-94," that "McDonald smelled an odor of alcohol on [Vecitis's] breath, and [Vecitis] admitted to having [consumed] two drinks earlier that day," and that Vecitis "attempted to show that the test results involved here are not appropriately to be considered by the [c]ourt" because they "were conducted with the presence of alcohol … in hand sanitizers utilized" by the deputies conducting the test.  The court also acknowledged Vecitis's theory related to blood in his mouth during the test before issuing its "conclusions of law … that the [I]ntoximeter testing involved was relevant and conducted to the requirements of the Wisconsin Administrative Code," that the instrument "would have ceased its operation of proceeding" if contaminants were found to exist, and "that the test result of .12 was appropriate under the circumstances here."

¶11    The trial court denied Vecitis's motion for reconsideration in an oral ruling following the motion and argument, and Vecitis filed this appeal[4] challenging the underlying judgment and the oral order denying the motion for reconsideration.

**STANDARD OF REVIEW**

¶12    Vecitis appeals a judgment of conviction entered after a trial to the court.  His arguments implicate the trial court's findings of fact, conclusions of

---

[4] In addition, Vecitis states in his Reply that this matter would be an appropriate appeal for consideration by the entire panel.  WISCONSIN STAT. RULE 809.41(a) requires a party in a one-judge appeal seeking review by a three-judge panel to file a motion, which Vecitis has not done.  This appeal will be resolved by one appellate judge.

law, and decisions regarding admissibility of evidence. Pursuant to WIS. STAT. § 805.17(2), a trial court's "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." By contrast, appellate courts review de novo a trial court's conclusions of law—even if the trial court characterized it as a finding of fact. *Carney v. CNH Health & Welfare Plan*, 2007 WI App 205, ¶14, 305 Wis. 2d 443, 740 N.W.2d 625; *City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992).

¶13    "The admissibility of evidence is within the trial court's discretion." *City of West Bend v. Wilkens*, 2005 WI App 36, ¶13, 278 Wis. 2d 643, 693 N.W.2d 324; *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶12, 263 Wis. 2d 649, 665 N.W.2d 198. "A trial court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable court could reach." *State v. Bailey*, 2009 WI App 140, ¶15, 321 Wis. 2d 350, 773 N.W.2d 488. Where this court is asked to review such rulings, we look not to see if we agree with the trial court's determination but rather whether that court exercised its discretion in accordance with accepted legal standards and with the facts of record. *National Auto Truckstops*, 263 Wis. 2d 649, ¶12.

¶14    Finally, this court reviews a motion for reconsideration under an erroneous-exercise-of-discretion standard. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853; *Lakeland Area Prop. Owners Ass'n, U.A. v. Oneida County*, 2021 WI App 19, ¶14, 396 Wis. 2d 622, 957 N.W.2d 605. Again, appellate courts "will affirm a discretionary decision as long as the [trial] court examined the relevant facts, applied a proper standard of law, and used a

demonstrated rational process to reach a reasonable conclusion." *Lakeland Area Prop. Owners Ass'n*, 396 Wis. 2d 622, ¶14.

## DISCUSSION

¶15 Vecitis and the County dispute whether the trial court decided several issues as factual matters or legal conclusions. Ultimately, this appeal implicates several findings of fact (some of which must be inferred), a discretionary decision on the admission of evidence, and a conclusion of law—namely, that the County met its burden of proof and established that Vecitis was guilty of first offense operating a motor vehicle while under the influence of an intoxicant.

¶16 Vecitis asserts that his inhalation of the hand sanitizer's alcohol vapor in the course of his alcohol breath test constitutes a violation of WIS. ADMIN. CODE § TRANS 311.06(3)(a), which bars him (as the test subject) from "ingest[ing] alcohol" prior to the breath test. He also asserts that he ingested capillary blood, which he claims was in his mouth due to the accident, and that that blood invalidated the test results. This court concludes that because the trial court's findings of fact were not clearly erroneous, and its decision to admit evidence was not an erroneous exercise of discretion, the County did establish Vecitis's guilt.

### I. The trial court's factual findings were not clearly erroneous.

¶17 There are two sets of factual findings in this appeal. First, the trial court made several explicit factual findings at the conclusion of the court trial. Next, the court implicitly made additional factual findings that must be reasonably

inferred—for without them, it could not have reached the conclusions that led to the guilty verdict.

¶18 The trial court heard testimony from law enforcement personnel, Vecitis, and experts for both sides. The court then expressly found the following facts: (1) The accident "occurred when [Vecitis] either missed or changed his mind" about when to exit the expressway, and Vecitis refused medical treatment; (2) "Deputy McDonald smelled an odor of alcohol on [Vecitis's] breath," and Vecitis admitted he consumed two drinks [old-fashioneds]; (3) Vecitis "was informed of the procedure involved with having an [I]ntoximeter, including a 20-minute observation period ... and that the testing was based upon the totality of the circumstances in this case"; and (4) Vecitis argues that the test results should not be considered because they "were conducted with the presence of alcohol or related substance in hand sanitizers utilized by the sheriffs conducting the [I]ntoximeter test," or because Vecitis "had blood in his mouth from head injuries received in the accident." None of these explicit factual findings is clearly erroneous, and Vecitis does not dispute them.

¶19 To reach its conclusions, however, the trial court necessarily had to make other findings—findings it did not expressly state on the Record but are inferred therefrom. It had to find that Vecitis either did not inhale or ingest sufficient quantities of the hand sanitizer alcohol vapors or that any inhalation did not significantly affect the Intoximeter test results. It also had to find that Vecitis either did not have blood (capillary or otherwise) in his mouth prior to or during the Intoximeter test or that the presence of any such blood did not significantly affect the Intoximeter test results. Without these findings, the court could not have concluded as it did that there were no contaminants present during the testing and

10

that the Intoximeter "functioned appropriately and consistent with its monitoring condition."

¶20    "[I]n some cases the evidentiary facts [in a case] give rise to ultimate facts upon which the conclusion of law must rest." *Kress Packing Co. v. Kottwitz*, 61 Wis. 2d 175, 178, 212 N.W.2d 97 (1973). "[W]hen undisputed facts permit the drawing of different inferences, the drawing of one such permissible inference of fact is an act of fact finding and the inference so derived constitutes an ultimate fact upon which a conclusion of law may rest." *Id.* "When there is conflicting testimony, the [trial] court [acting as the finder of fact] is the ultimate arbiter of the witnesses' credibility." *Welytok v. Ziolkowski*, 2008 WI App 67, ¶28, 312 Wis. 2d 435, 752 N.W.2d 359; *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979). "When more than one reasonable inference may be drawn from the credible evidence, a reviewing court must accept the inference drawn by the trial court." *Village of Big Bend v. Anderson*, 103 Wis. 2d 403, 410, 308 N.W.2d 887 (Ct. App. 1981).

¶21    Vecitis argues that he inhaled or ingested[5] alcohol vapor from Fettig's hand sanitizer deep enough into his lungs to invalidate his test result. Testimony centered on the odor of vapors in the ambient air and whether Fettig touched the mouthpiece after applying the hand sanitizer.

---

[5] This court need not decide whether inhalation of alcohol vapors constitutes "ingest[ion]" as defined in WIS. ADMIN. CODE § 311.06(3)(a), the standard procedure for pre-Intoximeter preparation, given the trial court's factual finding, which is not clearly erroneous, that it did not occur or affect the result in this case. *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (citation omitted)).

¶22 The trial court looked to the testimony of the witnesses. Sanders explained that the blank checks were designed to determine whether there was alcohol vapor in the ambient air, which, in Vecitis's case, all resulted in a reading of 0.000. The court weighed the credibility of Vecitis and Sanders and took into account Vecitis's expert's opinion.[6] There is no basis for this court to disturb those credibility determinations. The trial court's ultimate finding that Vecitis did not inhale or ingest alcohol from the hand sanitizer is not clearly erroneous; it is based upon the Record presented.

¶23 The question of capillary blood—and whether Vecitis had any blood in his mouth prior to or during the testing—was also in dispute. McDonald, who closely observed Vecitis for twenty minutes before the breath test was conducted, testified that he did not recall Vecitis spitting or producing excess saliva during that time period or during the test. Vecitis testified that he asked McDonald "at least once to go spit in a trash can for … excess saliva or blood in the mouth," and that he "believed" there was blood in his mouth during the twenty-minute observation period.

¶24 Again, the trial court considered the testimony of McDonald and Vecitis. It further considered Henson's expert testimony regarding the possible

---

[6] Neither this court nor the trial court is bound to accept an expert's opinion—even if there is no contrary or competing opinion. Relying upon federal cases, our supreme court in *Pautz v. State*, 64 Wis. 2d 469, 476, 219 N.W.2d 327 (1974) (citation omitted), held that "the opinion of an expert, even if uncontradicted, is not required to be accepted as such testimony must pass through the screen of the fact trier's judgment of credibility." Simply put, the trial court, like a jury, "is not bound by expert opinions; rather, it can accept or reject an expert's opinion." *Geise v. American Transmission Co.*, 2014 WI App 72, ¶13, 355 Wis. 2d 454, 853 N.W.2d 564; *State v. Kienitz*, 227 Wis. 2d 423, 438, 597 N.W.2d 712 (1999); *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50 (Ct. App. 1996) (trier of fact may accept certain portions of an expert's testimony while disregarding other portions).

impact of capillary blood or blood in a subject's mouth, and it determined that the test results were nevertheless relevant and accurate. The court apparently accepted the testimony of McDonald over Vecitis as to whether Vecitis spit during the observation period and breath test at the sheriff's department. Like the consideration of the trial court's other findings of fact, this court concludes that these inferred findings are not clearly erroneous, and there is no basis to overturn the trial court.

¶25    Finally, this court further notes that simply because Vecitis has a pre-existing cardiac syncope condition does not mean that he was not also under the influence of alcohol. The undisputed evidence about Vecitis's medical condition does not undercut the factual findings discussed above or render them clearly erroneous.

II.    **Given the trial court's factual findings, the breath test established that Vecitis had a blood alcohol concentration above the legal limit.**

¶26    "A conclusion of law goes farther and accepts the facts, ultimate and evidentiary, and by judicial reasoning results from the application of rules or concepts of law to those facts, whether the facts are undisputed or not." ***Kress Packing***, 61 Wis. 2d at 179. The trial court here concluded that: (1) "[T]he [I]ntoximeter testing involved was relevant and conducted to the requirements of the Wisconsin Administrative Code; and (2) "[T]he blank check on the ... [I]ntoximeter machine ... functioned as it was programmed so to do." If there were contaminants "on or in the area," it "would have ceased its operation of proceeding to a test result. This did not occur." It "functioned appropriately and consistent with its monitoring condition." Therefore, "the test result of .12 was appropriate under the circumstances."

¶27    The trial court built upon its findings of fact—both those expressly stated and implied—and concluded that Vecitis's blood alcohol concentration was .12, as shown by the two Intoximeter tests. This court reviews that conclusion of law de novo.

¶28    The first statement the trial court set out as a "conclusion" in reality included a discretionary decision on the admissibility of evidence in response to a defense raised by Vecitis. The court stated that the Intoximeter was (1) relevant and (2) that the testing was conducted pursuant to Wisconsin's administrative code. The court already found that the Intoximeter testing was properly performed and that the fact that it did not cease operations because of a non-zero blank check established that the machine "functioned appropriately and consistent with its monitoring condition." As noted above, there is no basis for upsetting this factual finding and the resulting discretionary decision to admit the evidence.

¶29    Aside from his assertions that inhaled alcohol vapor and capillary blood in his mouth impacted the Intoximeter, Vecitis does not assert that the device was not operating properly or that its results (if valid) are not relevant. And Vecitis's argument that his inhalation constituted "ingestion" such that his test was not in compliance with WIS. ADMIN. CODE § TRANS 311.06(3)(a),[7] even if this

---

[7] WIS. ADMIN. CODE § TRANS 311.06 provides:

> (3) Procedures for quantitative breath alcohol analysis shall include the following controls in conjunction with the testing of each subject:
>
> (a) Observation by a law enforcement person or combination of law enforcement persons, of the test subject for a minimum of 20 minutes prior to the collection of a breath specimen, during which time the test subject did not ingest alcohol, regurgitate, vomit or smoke.

14

court were to accept it, does not automatically render the test results inadmissible. In *Wertz*, 105 Wis. 2d at 671, we affirmed the trial court's conclusion that "compliance with all administrative code procedures was not required for test results to be admitted." While breath tests carry a statutory "prima facie presumption of accuracy," "the question of how accurately the test was performed goes to the weight to be given to the test, not to its admissibility." *Id.* at 674 (citation omitted).

¶30 Factors to be taken into account by a trial court include the ability for the defendant to conduct "a complete and detailed cross-examination of all witnesses, including the breathalyzer operator." *Id.* at 677. Here, Vecitis was able to cross-examine not only the operator of the Intoximeter and the officer who observed the test but also a state expert with knowledge of the device's functioning in general and the impact of its operation when possible contaminants are present. The court heard testimony about the practices and procedures for use of the Intoximeter and was able to determine whether the test was relevant, whether it was conducted pursuant to protocol, and whether anything had compromised the integrity of the testing procedure and its results.

¶31 Given all of these factors and recognizing that appellate courts afford deference to a trial court's discretionary decision to admit evidence, this court affirms the trial court's first "conclusion" regarding the relevance of the Intoximeter results.

¶32 The remaining question before this court is whether the trial court correctly concluded that the County met its burden, pursuant to WIS. STAT. § 346.63(1)(a), and established to a reasonable certainty, by clear, satisfying, and convincing evidence that Vecitis operated his motor vehicle while under the

influence of an intoxicant. Given this court's affirmation of all of the foregoing facts and the trial court's discretionary decision on admissibility, the County met its burden. This court, thus, affirms that conclusion of law.

### III.    The trial court properly denied the motion for reconsideration.[8]

¶33    In addition to appealing the judgment of guilt after the court trial, Vecitis has appealed the denial of his subsequent motion for reconsideration. This court looks to whether that decision resulted from a demonstrated rational process following an examination of the relevant facts as applied to the proper standard of law. *Lakeland*, 396 Wis. 2d 622, ¶14; *Koepsell's*, 275 Wis. 2d 397, ¶6.

¶34    At the motion for reconsideration hearing, the trial court found that, given the .12 blood alcohol concentration reflected in the Intoximeter result, Vecitis had likely consumed more than two drinks. It expressly rejected Vecitis's expert's opinion that the hand sanitizer applied by the tester rendered the test results false, and concluded that the medial syncope was "a factor that's going to [do] nothing more than exacerbate the issue of alcohol use under the circumstances here." The court further concluded:

> So because it was measured by an instrument which was said to be working—I have nothing to the contrary which indicates otherwise, and I do not have anything to the contrary that its ambient issues were raised by the hand sanitizer after the lack of a hand sanitizer was noted by the machine when it did its testing cycle.

---

[8] In his arguments to this court, Vecitis mischaracterizes the hearing on the motion for reconsideration; the trial court was not questioning testimony that was presented on the syncope diagnosis, instead, it was concerned that a summary of a 120-page trial exhibit (that had been handed to the court and County during the trial) had not ever been efiled and placed into the record.

> So altogether, under the circumstances, I'm going to deny your motion for reconsideration.

¶35 The trial court denied the motion for reconsideration based upon a review of the relevant facts; the court reiterated that it had rejected the opinion and theories espoused by Vecitis's expert. The court noted that because there were no other allegations that the Intoximeter was not functioning properly, there was no basis to overturn its earlier conclusion that Vecitis *was* operating a motor vehicle while under the influence of an intoxicant. Having already concluded that there is no basis to overturn the judgment following the court trial, this court concludes that the trial court's discretionary determination denying the motion for reconsideration, too, must be upheld.

## CONCLUSION

¶36 This court concludes that the findings made by the trial court were not clearly erroneous and the discretionary decision to admit evidence of Vecitis's breath test results was not in error. Based upon that test result, this court concludes that the County established that Vecitis had an improper blood alcohol concentration and was, thus, properly found guilty of operating a motor vehicle while under the influence of an intoxicant. In addition, the denial of the motion for reconsideration did not constitute an erroneous exercise of discretion. Accordingly, the judgment and order of the trial court are affirmed.

> *By the Court.*—Judgment and order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

17